JOSEPH A. CORAM *vs.* ANDREW J. DAVIS & others.

Suffolk. March 15, 16, 1911. — May 20, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Equity Jurisdiction,* To apply for satisfaction of debt trust fund created for that purpose, Adequate remedy at law, Statute of limitations, Laches. *Subrogation. Contract,* Construction. *Trust. Executor and Administrator. Equity Pleading and Practice,* Bill, Demurrer, Parties.

By an instrument purporting to be his will, an alleged testator left practically all of his property to one brother of several brothers and sisters. Descendants of other brothers and sisters, who, in case of intestacy, would have been entitled to seven twenty-seconds of the estate of the decedent, contested the allowance of the will, and procured large advances of money for that purpose from a stranger to whom and to one of their own number they assigned a part of their " interests in said estate " of the alleged testator, the proceeds of the interests so conveyed to be used, first, to repay all moneys advanced, second, to pay "lawyers bills and for other expenses." After a trial and a disagreement of the jury, and after a series of compromise agreements with other next of kin of the alleged testator, a decree was made allowing the will and adopting all of the agreements, so that the contestants, instead of receiving no part of the estate, received five twenty-seconds of it, and provision also was made for the payment of all their expenses, which were very large. *Held,* that for the re-payment to him of the advances so made by him the stranger was entitled to an equitable charge upon the interests, of which he had taken an assignment, in the shares due to the contestants under the compromise decree, the fact that the will was allowed not being material because such allowance was merely formal, the decree accompanying it being virtually a disallowance of the provisions of the will in favor of the contestants.

By an instrument purporting to be his will, an alleged testator left practically all of his property to one brother of eleven brothers and sisters. Some others of the next of kin of the decedent, who in case of intestacy would have been entitled to seven twenty-seconds of the estate, contested the allowance of the will, and a stranger, òn their promise to reimburse him from their shares, made large advances of money to them for that purpose and on their behalf employed counsel to whom he agreed to pay a large fee " in case the will is defeated and our clients get their shares." Pending the contest the brother who was to benefit by the will died. After a trial which resulted in a disagreement of the jury, a compromise agreement was made whereby those succeeding to the brother's interests were to receive twenty, and the contestants were to receive thirty-five one-hundred tenths, and each group was to receive " on account of expenses heretofore incurred " $500,000, the balance to be equally divided between the two groups, and, to carry out the agreement, those succeeding to the brother's interests and the contestants were each to receive twenty one-hundred tenths forthwith, the remaining fifteen one-hundred tenths to be paid to the contestants when all court proceedings properly were ended, and the remainder of the estate was to be

placed in the possession of trustees to carry out the agreement. The agreement also provided that all expenses incurred in carrying it out should be furnished, one half by those succeeding to the brother's interests and one half by the stranger, one of the trustees and one of the contestants, and "that the parties who furnish such funds shall be entitled to reimbursement." The stranger, with the trustee and the contestant referred to, signed the agreement and agreed to make advances according to its provisions, and the stranger made further advances. After extended negotiations with the other next of kin a decree finally was made distributing the estate in accordance with agreements of the parties, and a fund was paid to the trustees. The counsel brought a suit against the stranger and recovered judgment for his fee contingently promised. *Held,* that the stranger, both for the re-payment of the advances of money which he had made and for the payment of the judgment for the contingent fee of the counsel whom he had employed, was entitled by a suit in equity to avail himself of the fund thus set apart for the relief of the contestants, and, through them, for his relief.

By an agreement in writing made between the parties to a contest as to the proof of a will, it was provided that a part of the estate of the decedent should be paid to trustees who therefrom should pay a certain amount to each of the parties to the contest "on account of expenses and litigation heretofore incurred," that "all expenses incurred in the carrying out of" the agreement should be furnished, one half by one of the parties to the contest, and one half by one of the trustees, the other contestant and a stranger who previously had made advances, and "that the parties who furnish such funds shall be entitled to reimbursement of the same." The three parties who by the provisions of the agreement were to pay the second half of the expenses incurred in carrying it out also signed an agreement, appended thereto, that they would "from time to time, as required by the representatives of the parties" named in the agreement, advance one half of such expenses. The stranger advanced large sums of money for the carrying out of the agreement without the trustees requiring him so to do. *Held,* that the limitation of the stranger's undertaking as to making advances, that they should be required by the parties, did not preclude him from establishing an equitable charge upon the funds in the hands of the trustees for all of his advances, since the agreement creating the trust provided that all sums advanced for the purpose of carrying out the agreement should be repaid.

While a final decree of a court having jurisdiction of the subject matter of the settlement of the estate of a decedent, determining the parties to whom and the proportions in which the estate shall be divided if a division is made, conclusively determines those matters, a suit in equity may be maintained against the administrator and certain persons named in the order as to distribution to compel the defendants to recognize the validity of an equitable charge upon such of the funds in the hands of the administrator as are due under the decree to the other defendants.

Where one, who has made advances of money and rendered himself liable for the payment of a further sum on behalf of certain of the next of kin of a decedent in a contest against the allowance of the decedent's will, has a right to charge with the payment of such sums certain parts of the shares of certain of the next of kin and a fund which, by a decree of the Probate Court adopting compromise agreements of the parties, was to be paid to trustees for the payment of expenses attending the contest, he may enforce such right by a bill in equity, to which a demurrer on the ground that he has an adequate remedy at law will not be sustained.

The fact, that in a bill in equity different means are sought for the enforcement of one equitable right relating to the whole or different parts of one estate, does not make the bill multifarious.

It is not indispensable that all the parties to a suit in equity should have an interest in all the matters contained in the suit. It is sufficient if each party has an interest in some matters in the suit and that they are connected with the others; and, even if one is a necessary party to one part only of the case, the bill is not therefore necessarily multifarious.

In a bill in equity there were joined as parties defendant the administrator of an estate, and all the parties who by a decree of the Probate Court were found to be entitled to share in the final distribution of the estate, including certain persons to whom as trustees was to be paid from the estate a fund which they were to use in paying expenses of various of the next of kin in bringing about a settlement of a contest as to the allowance of an alleged will of the decedent. A partial distribution of the same estate in administration in another State had taken place. By the bill the plaintiff sought to charge the shares of certain of those interested as distributees and the trust fund with the payment to him of sums which he had advanced for such distributees in furthering the contest and bringing about the settlement, and also to compel the payment to him of the shares of two of the distributees which he had purchased. *Held*, that the bill was not multifarious, since it sought the determination of all rights of the plaintiff in a single estate, and it was for the interest of all parties that the whole question of the plaintiff's rights in the estate should be settled once for all in one suit.

In a suit in equity to charge with a debt due to the plaintiff from one group of defendants certain funds in which the other defendants are interested, if it appears from the allegations of the bill that an action at law by the plaintiff against the alleged debtors would be barred by the statute of limitations, but those defendants do not demur to the bill, demurrers of other parties on that ground will be overruled.

Where, from the allegations in a bill in equity, to enforce a claim of the plaintiff against the interests of certain persons in the estate of a decedent and against a fund to be paid from such estate to certain trustees, it appears that the bill was brought within four months after a decree of the Probate Court determining the rights of the defendants in the estate, a demurrer to the bill will not be sustained either on the ground that it is barred by the statute of limitations or by laches.

If, from the allegations of a bill in equity, seeking to enforce a right of subrogation to the rights of one who had maintained a successful suit against the plaintiff, it appears that the bill was filed within fourteen months after the final decree in the suit against the plaintiff, the bill is not demurrable, either on the ground that it is barred by the statute of limitations or that it is barred by laches of the plaintiff.

Where a bill in equity respecting a claim which arose in another State does not contain allegations as to the law of that State regarding the limitation of actions, a demurrer on the ground that the cause of action was barred by the statute of limitations of that State cannot be sustained, since the law of such State is a fact in a suit here and no allegation as to it appears in the bill.

BILL IN EQUITY, filed on February 14, 1910, in the Supreme Judicial Court and afterwards amended.

The substance of the averments of the bill and of the exhibits annexed thereto is as follows.*

In March, 1890, one Andrew J. Davis of Butte, Montana, a man of great wealth, died. He left no widow. His next of kin by the law of Montana, as well as by that of Massachusetts, were brothers, sisters, nephews and nieces, by name as follows: John A. Davis, a brother who was substantially the sole beneficiary named in a writing purporting to be the last will and testament of Andrew J. Davis, and who, if the decedent were declared intestate, would have been entitled to one hundred eleven-hundredths of the estate; Henry A. Root, Ellen S. Cornue, Sarah Maria Cummings, Elizabeth S. Ladd, Mary Louise Dunbar, sisters and children of sisters, hereinafter called the Root group, who, if the decedent were declared intestate, would have been entitled to three hundred fifty eleven-hundredths of the estate; Harriet R. Sheffield and Henry A. Davis, children of a brother, hereinafter called the Sheffield group, who, in case of intestacy, would have been entitled to one hundred eleven-hundredths of the estate; Harriet Wood, sister, Calvin P. Davis, brother, and Elizabeth S. Bowdoin, sister, hereinafter called the Wood group, entitled, in case of intestacy, to three hundred eleven-hundredths of the estate; Elizabeth A. Smith, child of a sister, entitled, in case of intestacy, to fifty eleven-hundredths of the estate; Erwin Davis, brother, and Diana Davis, sister, each entitled in case of intestacy to one hundred eleven-hundredths of the estate.

Shortly after the death of Andrew J. Davis, the Root group associated themselves together " to secure their share as heirs in " the estate and applied to the plaintiff, who had been a business associate of the decedent in his lifetime and familiar with his affairs, " to advance the required funds, promising and agreeing to repay him for the same out of their shares when secured, in some instances two for one and in some three for one;" and, relying on such promises, the plaintiff made large advances.

The alleged will was offered for probate in Montana in July, 1890, and the Root group " filed appropriate contests denying " its authenticity, and, the amount of the estate being very large, made elaborate preparations for the contest.

---

\* The bill itself covered twenty-nine pages of the printed record, and the exhibits annexed to it covered eighty-nine more pages.

In September, 1890, those of the Root group other than Henry A. Root assigned to him and one Wells one third of their " interests in said estate " of Andrew J. Davis in trust, to reimburse Root out of the avails thereof for all sums by him theretofore or thereafter.expended, and for liabilities incurred by him, on account of the settlement of the estate and the opposing of the probate of the will, as well as all sums which he might thereafter incur on account thereof, the entire residue of the one-third to be paid to Root as compensation for his time and service in that behalf used and employed. And the instrument provided " that this assignment shall be in full for all of such claims and demands, and that no further liability shall exist against " the four heirs signing it. Wells and Root also were appointed " attorneys in fact, irrevocable," to act for the four in regard to the procuring of their interests in the estate. Wells died in 1907 and no successor to him ever was appointed.

In January, 1891, Root retained Robert G. Ingersoll, Esquire, of New York as one of a large number of eminent counsellors at law to defend the interests of the Root group on a contingent fee of $100,000, contingent on the defeat of the instrument propounded as a will, and on February 10, 1891, the plaintiff paid Ingersoll a retaining fee of $5,000.

By June 10, 1891, the plaintiff had advanced $30,000 for the Root group, and, upon his refusing to advance more, Root by an instrument in writing and under seal conveyed to him one half of the interest which he had received from the other four of his group of heirs in the preceding September, " and of all money or other property, which may be received from the estate of said Davis on account of said . . . interest, and also one-half of any interest, interests, money or property which said Root may hereafter receive from " the others of the Root group " or any other heirs of said Davis or from the estate of said Davis by assignment or otherwise, and of all fees received by him as administrator of the estate of said Davis; all of said interests, money and property to belong to and be divided between said Root and Coram in equal shares " ; it being agreed that, if necessary to raise further funds, the entire interest so received from the four others of the Root group might be pledged, the pledge so created to be an equal lien on the half conveyed to the

plaintiff and the half retained by Root; that the management of the contest should be under the joint management of the plaintiff and Root with one Charles H. Palmer as deciding referee in case of disputes, and that, on final settlement, the proceeds of the interests conveyed should be used, first, to repay all moneys advanced, second, to pay "lawyers bills and bills for other expenses," and that the remainder should be divided equally between the plaintiff and Root. And it also was provided as follows: "It is the intention of this agreement and it is hereby agreed that said Root and Coram are to be equal partners and are to divide in equal shares all money and property which may be received in any way or manner from the estate of said Davis, remaining after the payment of advances and expenses, as above provided; except, however, that said one twenty-second interest now owned by said Root individually shall be and remain his and shall not in any way come into this division."

During the trial of the will contest, the plaintiff and Root signed the following agreement for Mr. Ingersoll:

"We agree that for your services in the contest . . . rendered and to be rendered, that your fee, in case the will is defeated and our clients get their shares, shall be $100,000 and that your expenses and disbursements shall be paid in any event. There is to be no personal obligation against J. A. Coram, in the event that the interests represented by Henry A. Root are unsuccessful, and in no event is the said J. A. Coram obligated except to pay such fee out of the funds secured from the estate of A. J. Davis, deceased, by Maria Cummings, Lizzie S. Ladd, M. Louise Dunbar, Mrs. Ellen S. Cornue and Henry A. Root."

The trial ended in September, 1891, in a disagreement of the jury. By that time the plaintiff had advanced upwards of $100,000. Root then represented to the plaintiff that all limitations on his power to bind the others of the Root group were removed, and, because of that representation, he procured over $25,000 more from the plaintiff for use in preparation for a second trial.

In the meantime, John A. Davis, who was practically the sole beneficiary under the alleged will, had died, and his interests were represented by his children, who hereinafter will be called the Davis group. One of them, John E. Davis, was appointed

administrator of his father's estate. Another of them was named Andrew J. Davis.

Before a second trial of the case, a compromise agreement under seal was made between the Davis group and the Root group on April 28, 1893. The agreement, after providing in substance that, " in case said will shall be finally probated, said estate shall be divided " by giving to the Davis group two hundred eleven-hundredths " in kind," and to the Root group three hundred fifty eleven-hundredths " in kind " ; each of the groups also to have $500,000 " on account of expenses and litigation heretofore incurred " ; and whatever balance remained to be divided equally between the two groups, continued as follows :

" For the purpose of carrying into effect the foregoing provision, the said parties of the first part do hereby sell, assign, transfer and set over unto the said parties of the second part an undivided three and one-half elevenths $(3\frac{1}{2}/11)$ of said estate in kind, and hereby direct that by the decree probating said will, if the same is probated, there shall be distributed immediately to said parties of the second part two and one-half elevenths $(2\frac{1}{2}/11)$ of said estate in kind, in such interests to each of said second parties as said second parties may at that time direct.

" There shall also be distributed by said decree to said first parties two elevenths (2/11) of said estate in kind in such interests to each as the said first parties at that time may direct; provided, however, that the transfers provided for in this section of this agreement shall not be valid unless said will is probated.

" The remainder of said estate, after the distribution of the two and one-half elevenths to the said second parties and the two elevenths to the first parties, shall be distributed by said decree to Charles H. Palmer and Andrew J. Davis as joint trustees of the parties hereto, to be applied, used or distributed according to the terms and provisions of this contract, and in such distribution to said trustees shall be included one eleventh (1/11) of said estate in kind, which shall be held by said trustees ; and if said will shall finally be probated and the estate distributed under said will according to the terms of this contract, said trustees are hereby directed to deliver over and transfer unto said parties of the second part in such interests to each as second parties at that time direct the said one eleventh (1/11) of said

estate so distributed to and held by such trustees in the manner above recited."

There also were in the agreement provisions with regard to the contingency of a successful contest of the will by other beneficiaries, and it was provided in its thirteenth article "that all expenses incurred in the carrying out of this contract shall be furnished, one-half by the [Davis group] and one-half by Henry A. Root, Joseph A. Coram and Charles H. Palmer. And it is further agreed that the parties who furnish such funds shall be entitled to reimbursement of the same, together with interest at the rate of ten per centum per annum, from the date of the respective advances out of such estate." After the signatures of the Davis group and the Root group, was the following, signed under seal by the plaintiff, Root and Palmer: "In consideration of the execution of the foregoing contract, and of the reimbursement as herein provided for, we . . . hereby jointly and severally agree to advance from time to time, as required by the representatives of the parties therein named, one half of all expenses which may be incurred in carrying this contract into effect." The trust was accepted in writing by Andrew J. Davis and Palmer.

At the time of the execution of the foregoing agreement the plaintiff had advanced more than $126,000 for the Root group. The bill alleged that the clause in the agreement creating a trust fund of $500,000 in the hands of Davis and Palmer, joint trustees, was inserted to provide for reimbursement of his advances and for compensation of Mr. Ingersoll, "and said sum of $500,000 became a special trust fund for" their benefit. "Paragraph thirteen of said agreement was inserted in order to retain" the plaintiff's good will and co-operation and "in order to induce him to make further advances, as it was well known that further large outlays would be necessary before the estate could be finally settled; and in reliance thereon and in consideration thereof" he made further large advances.

Thereafter the Sheffield group "filed a contest" of the will, and on March 25, 1895, an agreement under seal was made between them and the Davis and Root groups, to which the plaintiff assented in writing, although he was not a party to it, whereby the Sheffield group were to be given forty-four eleven-

hundredths of the estate and a decree proving the will was to be entered which should contain such provision. The agreement also provided that the interest so to be distributed to the Sheffield group should " be subject to no cost or expense of litigation save and except such as may be incurred by the general administrator of said estate in his administration, under the order of the court, and that any and all contests concerning the validity of said will or the ownership of said property of said Andrew J. Davis, deceased, by any other person or persons, shall be managed and paid for by " the Davis and Root groups.

On March 27, 1895, a decree was entered in the Montana court by consent of the Davis, the Root and the Sheffield groups, admitting to probate the will of Andrew J. Davis and directing that the Sheffield group receive from the estate forty-four eleven-hundredths, that the Davis group receive four hundred seventy-five eleven-hundredths after paying the Sheffield group twenty-two eleven-hundredths, and that the Root group receive six hundred twenty-five eleven-hundredths after paying to the Sheffield group twenty-two eleven-hundredths. The decree also provided as follows : " And the said stipulations and agreements of the parties in interest, and to be affected by this cause and proceeding is, by consent in open court, adopted and made the basis of this order and decree, according to the terms and provisions of said stipulations and agreements."

Thereafter the Wood group entered contests and on June 22, 1897, an agreement was made between them and the Davis and the Root groups by which the Davis and the Root groups agreed that each of the three individuals composing the Wood group should receive fifty eleven-hundredths of the estate. It also was agreed that, in case of a settlement with Elizabeth A. Smith, who also had filed a contest of the will, the portions to be paid to the Wood group should not be diminished thereby. There also were in the agreement the following provisions: " It is mutually understood, covenanted and agreed that all parties hereto shall, so far as in their power lies, aid in securing speedily both a partial and final distribution of the said estate or estates, according to the terms of this agreement and without the giving of any bonds, if practicable, and agree to endeavor to obtain an order of the court accordingly.; and it is further agreed that no

party to this instrument shall oppose such distribution, partial or final, and that all parties hereto shall assist, so far as in their power lies, in securing the property of said estate in Massachusetts to be forwarded by the administrators of the said estate in Massachusetts to the administrators of said estate in Silver Bow County, Montana, to be then in said county distributed as speedily as possible."

On August 6, 1897, a compromise agreement was made by the Davis and the Root groups with Elizabeth A. Smith, which provided for the payment to her of twenty-five eleven-hundredths of the estate, it being provided that such share should be free from all costs, expenses, counsel and attorney fees of the Davis and Root groups. The agreement also contained the provision quoted in the preceding paragraph from the agreement with the Wood group.

On August 24, 1897, a further decree was made by the Montana court ratifying all of the foregoing agreements and adopting them as its basis, modifying the former decree to conform with all of the agreements, and decreeing that the " parties were adjudged to have the following portions of the estate: " the Davis group, two hundred eleven-hundredths ; the Root group, two hundred fifty eleven-hundredths ; the Sheffield group, forty-four eleven-hundredths ; the Wood group one hundred fifty eleven-hundredths ; Elizabeth A. Smith twenty-five eleven-hundredths, and Davis and Palmer, trustees under the agreement of April 28, 1893, four hundred thirty-one eleven-hundredths. The decree differed from the decree of March 27, 1895, among other particulars, in that it gave to the trustees, Davis and Palmer, only four hundred thirty-one instead of five hundred eleven-hundredths of the estate, the shares of the Sheffield and of the Wood groups and of Elizabeth A. Smith being taken from the share formerly given to the trustees.

On August 26, 1897, a " first distribution " of the estate in Montana was made and a four hundred thirty-one eleven-hundredths share given to the trustees, who, " though often requested, have utterly refused and neglected to account " to the plaintiff for any part thereof, except a sum of $54,055.73, which was paid to him, but whether on account of his advances, he could not say in the absence of an accounting by the trustees.

In October, 1897, occurred ancillary administration of the estate and proof of the will in Massachusetts. An appeal by Erwin Davis, one of the next of kin, was dismissed. According to a recital in one of the agreements previously described, Diana Davis had sold her interest to the Davis and the Root groups.

On November 25, 1898, the plaintiff purchased the shares of Elizabeth S. Ladd and Mary Louise Dunbar, two of the Root group, and they were conveyed to him.

On June 15, 1903, the administratrix of the estate of Mr. Ingersoll filed a bill in equity in the United States Circuit Court for the District of Massachusetts against the plaintiff herein, the Root group·excepting Ellen S. Cornue, the trustees Davis and Palmer, and the administrator with the will annexed of the estate of Andrew J. Davis, to establish an indebtedness of $95,000 with interest, alleged to be due from the plaintiff herein and Root in accordance with the terms of the letter previously quoted, and to reach their interest in the estate in satisfaction thereof. The suit was successful (see *Ingersoll* v. *Coram,* 211 U. S. 335) and by it the plaintiff herein was deprived of " possession and control of three hundred sixty-eight and three fourteenths eleven-hundredths of " the estate and that share was appropriated to the payment of the indebtedness. The bill alleged that a final decree after rescript therein was entered " on     1909 " [*sic*].

On October 26, 1909, the Probate Court for Suffolk County determined the persons entitled to share in the estate and the fractional portions to which each was entitled to be in accordance with the decree of the Montana court of March 27, 1895, previously described. An appeal was taken by parties in interest which, at the time of the filing of the bill, still was pending.

At the request of the Root group, in consideration of and in reliance upon the terms of their agreements hereinbefore described between March 24, 1890, and April 28, 1893, the plaintiff had advanced the principal sum of $98,938.45, which sum with interest was due and owing at the time of the making of the agreement of April 28, 1893; and by virtue of that agreement he became entitled to a lien upon the interest of the Root group in Massachusetts; and, in the event that the amounts of their interests were insufficient to satisfy his lien, to a further lien upon all the interests in the estate agreed to be transferred to

Davis and Palmer as trustees by said agreement of April 28, 1893, for the unsatisfied balance with interest. And, no part of that sum and interest having been paid or satisfied, except as otherwise specified above, the bill alleged that the plaintiff was entitled to payment for the unsatisfied part of such sum and interest from the interests in the estate of Andrew J. Davis of the Root group and the interests of Davis and Palmer, trustees, in the custody of the ancillary administrator, and was entitled to a lien thereon.

Relying upon the promises and covenants of the contract of April 28, 1893, and pursuant to its terms and conditions and in consideration thereof and at the request of the parties thereto, the bill alleged, the plaintiff advanced after that date and previous to the date of the bill the sum of $49,033.08, and by virtue of the agreement of April 28, 1893, that sum, together with interest, was due and owing to him out of the interests in the estate of Andrew J. Davis, deceased, in Massachusetts of the parties to that agreement and those claiming under them or by virtue of said compromise decree of 1895 and 1897, (saving the interests of the Sheffield group except as the latter have received or claim the right to receive any portion of the trust fund established by the agreement of April 28, 1893,) and was a lien thereon.

The provision in the contract of April 28, 1893, the bill further alleged, creating a trust fund of an undivided five hundred fifty eleven-hundredths interest in the hands of Davis and Palmer as joint trustees, was for the use and benefit of the plaintiff and was established to provide for the disbursements and advances of the plaintiff already made and the obligations he had assumed, and in order to induce him to make further advances and to further obligate himself, and the said advances and obligations of the plaintiff previous to April 28, 1893, were an equitable charge and lien on that interest to the amount of $500,000.

The distributive share to which Davis and Palmer, trustees, were entitled under the decree of distribution of the Probate Court for Suffolk County, Massachusetts, of October 26, 1909, was far less than the amount of the plaintiff's claim and insufficient to satisfy it. The total amount of the funds belonging to the estate of Andrew J. Davis, deceased, in the hands of the ancillary administrator, after the payment of the lien created for

Ingersoll by the decree of the Circuit Court of the United States and the payment of the distributive shares of the estate not subject to any lien in favor of the plaintiff, would be insufficient to pay the plaintiff's claim.

Root had acquired the interests of Sarah Maria Cummings and of Ellen S. Cornue of the Root group, and also interests in other shares for which, in violation of his agreement with the plaintiff, he did not intend to account to the plaintiff.

The parties defendant to the bill included, with the exception of Erwin Davis and Diana Davis, all of the next of kin of Andrew J. Davis or their successors, the trustees Davis and Palmer, and the Montana administrator with the will annexed of the estate of Andrew J. Davis, who also was ancillary administrator in Massachusetts.

The prayers of the bill, besides a prayer for general relief, were in substance as follows:

1. That the ancillary administrator in Massachusetts be enjoined, pending the determination of the cause, from paying to any or all of the defendants all or any part of the estate of Andrew J. Davis in Massachusetts, or from distributing the same under the decree of the Probate Court for Suffolk County, dated October 26, 1909, other than pursuant to the decree of the United States Circuit Court to be applied to the satisfaction of the lien in favor of Mr. Ingersoll;

3. That a receiver be appointed to take charge of the estate of Andrew J. Davis;

4. That judgment be decreed in favor of the plaintiff against Davis and Palmer, joint trustees, and against those of the Root group who had not sold their shares to the plaintiff for the amount of the disbursements of the plaintiff from March 14, 1890, to April 28, 1893, with interest;

5. That judgment be decreed against all of the defendants other than the administrator and the Sheffield group for the disbursements of the plaintiff since April 28, 1893, to date, with interest;

6. That the amount of advances of the plaintiff previous to April 28, 1893, with interest be adjudged a lien on the undivided interest of the Root group other than those who had assigned their interests to the plaintiff and that such lien

be foreclosed and the proceeds applied in payment of the indebtedness;

7. That the amount of the advances of the plaintiff previous to April 28, 1893, with interest be adjudged a lien on the undivided interest of Davis and Palmer, as joint trustees, and that such lien be foreclosed and the proceeds applied in payment of the indebtedness;

8. That the amount of advances of the plaintiff since April 28, 1893, with interest be adjudged a lien on the undivided interest of all of the defendants other than the administrator and the Sheffield group, except as the Sheffield group have received or claim the right to receive any portion of the five hundred fifty eleven-hundredths set aside by the agreement of April 28, 1893, as a trust fund; and that such lien be foreclosed and the proceeds applied in payment of the indebtedness;

9. That in the event the trust fund in the hands of said Davis and Palmer as joint trustees should not be sufficient to provide for the disbursements and advances of the plaintiff made or incurred previous to April 28, 1893, judgment be decreed in favor of the plaintiff against the defendants other than the administrator for any amounts received by them under the decree of August 24, 1897, in the Montana court and to be received by them under the decree of October 26, 1909, in the Probate Court for Suffolk County in Massachusetts, which rightfully under the compromise agreement of April 28, 1893, with the plaintiff should have been distributed to the trust fund, and that the plaintiff be adjudged to have a lien on their undivided interests for such amounts and that such lien be foreclosed and the proceeds applied in payment of the indebtedness;

10. That the plaintiff in payment of the lien of Ingersoll, administratrix, be subrogated to her rights and be entitled to reimbursement for such payment out of the remaining shares of the estate belonging to the Root group and out of an undivided one half of the trust fund in the hands of Davis and Palmer, joint trustees;

11. That Root be obliged to account to the plaintiff for one half of one third of the shares of the other four of the Root group received by him under the agreement of September, 1890, together with an undivided one half of any and all interest by him

at any time received from the estate of Andrew J. Davis which shall remain after the satisfaction of the claim of the plaintiff;

12. That the ancillary administrator be ordered to pay to the plaintiff as assignee of Elizabeth S. Ladd and Mary Louise Dunbar any balance remaining due to them after the satisfaction of the liens of the plaintiff.

The defendants Davis and Palmer, trustees, demurred to the bill (1) for want of equity; (2) because the plaintiff had a " plain, speedy, adequate and complete remedy at law;" (3) because the bill was multifarious; (4) because the plaintiff was guilty of laches, and (5) because he was barred by the statutes of limitations of Montana and of Massachusetts.

The defendant the administrator with the will annexed both in Montana and Massachusetts of the estate of Andrew J. Davis, and the defendant the administrator of the estate of John A. Davis, in behalf of the Davis group, severally demurred on the same grounds excepting the second.

The demurrers were heard by *Hammond,* J., who overruled them and reported to the full court " the question whether and to what extent the demurrers should be overruled or sustained."

*C. M. Wood,* (*H. B. Stanton* with him,) for the plaintiff.

*E. N. Harwood* (of Montana) *& H. R. Bailey,* for the defendants Davis and Palmer, trustees.

*C. E. Stearns,* for the defendant Leyson, submitted a brief.

SHELDON, J.   The plaintiff alleges in his bill that for his advances made to the defendant Root for his benefit and for that of the other four heirs to the Davis estate for whom Root was acting (hereinafter called the Root group), he had, under the assignments made by the Root group, a lien upon fractional interests of what would be their respective shares in said estate if the will of the elder Davis should not be allowed; that by the agreement of compromise made on April 28, 1893, between the parties in interest, the will, although in form to be allowed, was in reality set aside and shares larger than they could have expected were assigned to the Root group; that by that agreement there was to be allowed to the Root group out of the estate the sum of $500,000, on account of their expenses theretofore incurred in litigation, and that this provision was intended to be a provision for the

repayment of the advances so made by the plaintiff, and for the payment of Mr. Ingersoll, who had been employed to represent that group on the promise of a contingent fee. This agreement provided also, in its thirteenth article, that all expenses incurred in carrying it out should be furnished, one half by the parties to it of the first part, and one half by the plaintiff and two others, and provided for their reimbursement out of the estate. A decree was afterwards entered in the Montana court, in which the contest over the will was pending, admitting the will to probate, ordering distribution according to the terms of the compromise agreement and some later agreements not now material, and adopting the agreements of the parties. That court also by a later decree confirmed the agreement of compromise and the later agreements by which contests over the will were settled. The plaintiff alleges also that he then advanced further sums of money which ought, under the agreement, to have been repaid to him out of the estate as well as out of the shares of the Root group. He avers that the assets in the hands of the defendant Leyson, the ancillary administrator of the estate of the elder Davis in this Commonwealth, after paying the amount which has been found due to Ingersoll, and the shares of other heirs upon which the plaintiff has no specific right of charge, are insufficient to meet the plaintiff's demands, and claims the right to hold the assets that are or should be in the hands of the defendants Davis and Palmer, regardless of distributions thereof which they have made to the distributees of the estate. He alleges also that, after the payment of Ingersoll out of the funds which are available to him, he is. entitled to be subrogated to the equitable lien or charge which it has been decided that Ingersoll has upon the shares of the Root group or parts thereof. *Ingersoll* v. *Coram*, 211 U. S. 335. He has joined as defendants the administrators of the Davis estate in Montana and in this Commonwealth, all parties interested in the estate as distributees or their representatives, and all the parties to the agreements of compromise.

1. The first ground of demurrer is for lack of equity. We are of opinion that the plaintiff shows for the payment of his advances made before April 28, 1893, an equitable charge upon the interests in the shares of the Root group, of which he had

taken assignments.  This is scarcely disputed, and need not be discussed.

These shares or rights could not come into existence, and there would be no fund upon which the plaintiff could have a charge, unless the will of Davis were disallowed; and the will was admitted to probate.  But it was merely a formal allowance, and in reality all but a few minor provisions of the will were wholly set aside by the agreement of the parties and the decree of the Montana court made thereon.  This has been so decided both by the Circuit Court and by the Supreme Court of the United States.  *Ingersoll* v. *Coram*, 127 Fed. Rep. 418, and 211 U. S. 335.  It was so held in Montana, the State in which Davis had his domicil and in whose courts the proceedings were had.  *In re Davis' Estate*, 27 Mont. 490.  We cannot now regard this as an open question.

Can the plaintiff resort in equity to the fund provided by the compromise agreement to meet the expenses thus far incurred in the litigation?  Was this fund or any part of it so far appropriated for the payment of his claim including what might be found to be due to Ingersoll as to give this right to the plaintiff?  It was not provided by the agreement that payment should be made to him or to Ingersoll; the parties were "to have and receive" it out of the amount which was to be paid by the trustees.  But it was set aside for their expenses.  It was a means provided to meet these liabilities, a fund out of which they were to make the payments.  Under such circumstances a creditor may in equity avail himself of the means of paying his demand which have been thus set apart for the relief of his debtor and through his debtor for himself.  *Wiggin* v. *Dorr*, 3 Sumner, 410.  *Rice* v. *Dewey*, 13 Gray, 47.  *Demott* v. *Stockton Paper Ware Manuf. Co.* 5 Stew. 124.  *Harmony National Bank's Appeal*, 101 Penn. St. 428.  *Dunlap* v. *O'Bannon*, 5 B. Mon. 393.  *Ross* v. *Saulsbury, Respess & Co.* 52 Ga. 379.  *Ex parte Dever*, 14 Q. B. D. 611.  *City Bank* v. *Luckie*, L. R. 5 Ch. 773.

The plaintiff for the money furnished by him to carry out the compromise agreement rests upon the provision thereof that this should in part be furnished by him and others and should be repaid out of the estate.  It is true, as was said in *Elmore* v. *Symonds*, 183 Mass. 321, 326, that a mere personal promise to

pay a debt out of a particular fund will not create a lien or equitable charge upon the fund. *Christmas* v. *Russell*, 14 Wall. 69. *Dillon* v. *Barnard*, 21 Wall. 430. *Trist* v. *Child*, 21 Wall. 441. *Removal Cases*, 100 U. S. 457. *In re Butler's Estate*, 105 Fed. Rep. 549. *Rogers* v. *Hosack's Executors*, 18 Wend. 319. *McDonald* v. *American National Bank*, 25 Mont. 456. But this was not a naked agreement to pay the expenses in the manner provided. It was an arrangement by which the persons who were to furnish the necessary money had the right to understand that the funds of the estate, at least so far as those funds should come to the hands of the trustees, were appropriated for their payment. It was an agreement by all the parties then in interest, undertaking to provide for the disposition of the whole estate and engaging that the amounts properly furnished for the carrying out of the agreement should be repaid out of the designated fund. It authorized the custodians of the fund to apply it so far as might be necessary for this purpose. It appropriated the fund for the repayment, and thereby created an equitable charge upon it. This doctrine has been undisputed since the decision of *Legard* v. *Hodges*, 1 Ves. Jr. 478. It has been affirmed by this court. *Baylies* v. *Payson*, 5 Allen, 473. *Pinch* v. *Anthony*, 8 Allen, 536. It has been declared by other courts in elaborate opinions. *Ingersoll* v. *Coram*, 211 U. S. 335. *Walker* v. *Brown*, 165 U. S. 654. *Fourth Street Bank* v. *Yardley*, 165 U. S. 634. *Ketchum* v. *St. Louis*, 101 U. S. 306. *Fletcher* v. *Morey*, 2 Story, 555. *Stranahan* v. *Richardson*, 75 Minn. 402.

But the defendants contend that by the compromise agreement the plaintiff and his associates were to be repaid only such advances as they were required by the trustees to make. This contention is based upon the undertaking of Coram and others subjoined to the agreement that they would " advance from time to time as required " by the trustees " one half of all expenses," etc. This bound the plaintiff to make only such advances as should be required by the trustees, but it leaves unqualified the provision in the thirteenth article of the agreement that all funds furnished for " expenses incurred in the carrying out " of the agreement should be reimbursed out of the estate. The plaintiff may well have been unwilling to bind himself without limitation by an independent promise to ad-

vance money without an assurance from the trustees that it was really needed; but the parties to the agreement did not choose to put the limitation upon their promise of repayment. Moreover the covenant of the parties of the first part to furnish one half of such expenses was unlimited, and called for no assurance or requirement from the trustees; and the obligation of repayment to the plaintiff was the same as to those parties. We cannot now for the benefit of the defendants add to their absolute obligation a limiting stipulation not contained in the agreement. The agreement as written must be taken to be the final and complete repository of the intention of the parties to it. *Bray* v. *Kettell*, 1 Allen, 80, 83. *Howland* v. *Leach*, 11 Pick. 151, 154. *Brown* v. *Fales*, 139 Mass. 21, 28.

The bill in no way seeks to overthrow the orders of distribution made in the District Court of Montana or in the Probate Court here. Indeed, those orders, establishing the funds to which the plaintiff must look and fixing their amount, are the basis upon which, if at all, the bill must be maintained. Until those orders should be made, the plaintiff's remedy would not be completely available. Even if his rights might have been established and declared before the making of those orders, yet they could not all have been enforced until those orders should be made. *Ingersoll* v. *Coram*, 211 U. S. 335, 357. Those orders, if not appealed from, conclusively establish the amounts to be distributed, the parties entitled, and the sums to be paid to each distributee; they are not now to be attacked. *Loring* v. *Steineman*, 1 Met. 204. *Crippen* v. *Dexter*, 13 Gray, 330. *White* v. *Weatherbee*, 126 Mass. 450. *Pierce* v. *Prescott*, 128 Mass. 140, 143. *Harris* v. *Starkey*, 176 Mass. 445, 447. *Tobin* v. *Larkin*, 187 Mass. 279. *Minot* v. *Purrington*, 190 Mass. 336. *Cleaveland* v. *Draper*, 194 Mass. 118. But the Probate Court does no more than to determine these questions and to order distribution accordingly. It does not concern itself with assignments or pledges of the distributive shares or with the enforcement of equitable liens thereon. Such questions must be determined in other courts; and in the case at bar the questions raised are for a court of equity to settle. *Lenz* v. *Prescott*, 144 Mass. 505, 515. Nor is it a bar to maintaining this bill that part of the property involved may be in Montana. *Ricketson* v. *Merrill*, 148 Mass. 76, 83.

2. The reasons already stated show that the plaintiff has not an adequate remedy at law. His claim to charge for his payment the whole or some fractional parts of any of the distributive shares of this estate, or any part of the trust fund already referred to, or to reach and apply any part of that fund in the hands of distributees who have received it from the trustees either as volunteers or with notice of the plaintiff's equitable rights, plainly can be enforced only in equity. *Lenz* v. *Prescott,* 144 Mass. 505. *Ingersoll* v. *Coram,* 211 U. S.' 335. The bill does not state a case in which the plaintiff has trusted merely to personal promises and must be left to rely upon them, as in *Hussey* v. *Arnold,* 185 Mass. 202, 203, and *Taylor* v. *Davis,* 110 U. S. 330. We need not consider whether, if that were the case, the bill could be maintained under the prayer for general relief or otherwise under R. L. c. 159, § 3, cl. 7.

3. It is said also that the bill is multifarious. So far as it seeks merely to recover the plaintiff's advances to the Root group and the amounts furnished by him to carry into effect the compromise agreement, this objection cannot be sustained. The bill aims at one object, the reimbursement of the plaintiff by the application of certain funds, in one or another of which all the defendants are directly or indirectly interested. The fact that different means are sought for the enforcement of one equitable right, out of the whole or different parts of one estate, does not make the bill multifarious. *Parker* v. *Simpson,* 180 Mass. 334. *Dunphy* v. *Traveller Newspaper Association,* 146 Mass. 495, 499. *Lenz* v. *Prescott,* 144 Mass. 505, 512, 513. *Commercial Mutual Ins. Co.* v. *McLoon,* 14 Allen, 351. As in *Andrews* v. *Tuttle-Smith Co.* 191 Mass. 461, it is desirable that all the claims of the plaintiff which affect the administration of the estate should be disposed of in one suit. All of the defendants are properly made parties. *Attorney General* v. *Parker,* 126 Mass. 216. *Cassidy* v. *Shimmin,* 122 Mass. 406. *Graves* v. *Corbin,* 132 U. S. 571, 576, following *Brinkerhoff* v. *Brown,* 6 Johns. Ch. 139. *Colbert* v. *Daniel,* 32 Ala. 314. The language of Devens, J., in *Lenz* v. *Prescott,* 144 Mass. 505, 513, is applicable: "The plaintiff has a demand growing out of an assignment by which every defendant was affected, and their various interests are so blended that it would be impossible to separate the investi-

gation of them with convenience. It is not indispensable that all the parties should have an interest in all the matters contained in the suit; it is sufficient if each party has an interest in some matters in the suit, and that they are connected with the others. Even if one is a necessary party to some portion only of the case, the bill is not therefore necessarily multifarious."

The plaintiff avers also that he has purchased the interests of two of the distributees of the estate, and asks that the net amount of their shares be ordered to be paid to him. This alleged right too is a part of the general right which the plaintiff claims to have acquired in the estate and its administration. It is within the reason of the decisions last referred to. It is for the interest of all parties that the whole question of the plaintiff's rights in the estate should be settled once for all in one suit. *Noble* v. *Joseph Burnett Co.* 208 Mass. 75.

4. If the bill shows that the plaintiff's whole remedy is barred by our statute of limitations, this is ground of demurrer. *Fogg* v. *Price*, 145 Mass. 513, 516. But it is not material to determine whether an action at law for the plaintiff's advances made to the Root group before April 28, 1893, would be so barred. Those defendants have not cared to raise the question upon the demurrers. If they choose to waive the defense, it is not for the demurring defendants to set it up. Moreover, as we have seen, the plaintiff's equitable remedy against the fund here was not complete until proper action had been taken in the Probate Court; it would be hard to say that he was bound to bring his bill earlier. The same considerations apply to money furnished by the plaintiff since the date last mentioned under the compromise agreement. Nor need he seek to be reimbursed for what must be paid to Ingersoll until that liability had been established. So far as this defense depends upon the Montana statute of limitations and the local law of that State, this is matter of fact, of which, as it is not stated in the bill, we can have no knowledge except by plea and proof, and is not a ground of demurrer. And the bill is brought to enforce security which the plaintiff claims to hold by reason of equitable liens or charges. We need not consider whether such equitable security would fall with the indebtedness if the debtors should maintain this defense, or whether the plaintiff still could enforce his

equitable security though the action at law was gone. *Shaw* v. *Silloway*, 145 Mass. 503, 506. *Townsend* v. *Tyndale*, 165 Mass. 293. This is not a good ground of demurrer.

5. For substantially similar reasons, it cannot be said that the bill shows such laches as to bar the plaintiff. The bill seems to have been brought with reasonable expedition after the decree of the Probate Court had been made. There is nothing to show that the rights of the defendants have been injuriously affected by delay. There is no fixed rule as to what constitutes laches; it depends upon the circumstances. *Snow* v. *Boston Blank Book Manuf. Co.* 153 Mass. 456, 458. See *Sunter* v. *Sunter*, 190 Mass. 449; *Manning* v. *Mulrey*, 192 Mass. 547; *Hill* v. *Mayor of Boston*, 193 Mass. 569; *Moseley* v. *Bolster*, 201 Mass. 135, The bill upon its face does not come within the doctrine of such cases as *Royal Bank of Liverpool* v. *Grand Junction Railroad*, 125 Mass. 490, 494; *Dunphy* v. *Traveller Newspaper Association*, 146 Mass. 495; *Willard* v. *Wood*, 164 U. S. 502; *Holder* v. *Hillson*, 170 Mass. 466; *Doane* v. *Preston*, 183 Mass. 569; *Sawyer* v. *Cook*, 188 Mass. 163; and *Marvel* v. *Cobb*, 200 Mass. 293. See *Hawkes* v. *Lackey*, 207 Mass. 424. It may be that when the facts shall have been developed the plaintiff's case will fail in whole or in part by reason of laches or of the statute of limitations, if those defenses are set up, but we cannot say that either of them is shown by the averments of the bill.

We have not considered whether the agreements under which the plaintiff advanced money to the Root group could be avoided for champerty or maintenance, as that question has been neither raised nor argued.

*Demurrers overruled.*