# Metropolitan Life Insurance Company v. Little.

(Decided October 9, 1912.)

## Appeal from McCracken Circuit Court

1. Insurance, Life—Application For Insurance—When Not Attached to Policy Is Inadmissible in Evidence.—Where the application for insurance was not attached to, nor incorporated in the policy, it is not admissible as evidence in an action on the policy.
2. Insurance, Life—Provision in Policy as to Serious Disease—Evidence.—Where a policy of insurance provided that unless waived, the policy should be void if the assured has been attended by a physician for any serious disease or complaint, it cannot be said that such diseases as malaria, diseases of the kidneys, etc., referred to in a claim under a health policy were such as to come within the category named as avoiding the policy—such as pulmonary disease, chronic bronchitis, cancer, disease of the heart, etc.

WHEELER & HUGHES for appellant.

SAMUEL H. CROSSLAND for appellee.

OPINION OF THE COURT BY JUDGE WINN—Affirming.

On August 22, 1910, the appellant, the Metropolitan Life Insurance Company, issued its policy of insurance upon the life of Estella Little, a young woman then 23 years of age, payable to James Little, her father, the appellee. Estella Little died on July 24, 1911. Proofs of her death were made up and presented to the company with demand for payment. The company denied liability under the policy; whereupon James Little brought his action below to enforce it. Upon trial a jury was waived, evidence heard and judgment rendered in favor of James Little for the amount named in the policy. The insurance company appeals.

In the text of the policy contract is to be found the following provision: "Unless otherwise stated in the blank space below in a waiver signed by the Secretary, this policy is void if the insured before its date has been rejected for insurance by this or any other company, or has been attended by a physician for any serious disease or complaint; or has had before said date any pulmonary disease, or chronic bronchitis, or cancer, or disease of the heart, liver or kidneys." The company in its answer setting up this provision of the policy said that there was

no waiver upon it of any of the conditions named in the provision; that the said Estella Little had fraudulently represented to the company that she was at the time of the issuance of the policy, in perfect health and had never been treated by a physician for any serious illness; but that as a matter of fact, she had on the 2nd day of August, 1910, been treated by a physician for consumption; and that on that date she had consumption; that on the 2nd day of July, 1910, she had likewise been treated by a physician for a serious illness or complaint; that these facts were known to her when she applied for insurance, but that she suppressed them; that she signed a written statement in applying for the insurance, in substance that she had never suffered with any consumption; that it would not have issued the policy had it known that the insured, at the time or prior thereto had suffered with consumption or been treated by a physician for any serious complaint or disease; and that "it pleads and relies upon said provision of the contract above quoted in avoidance of the contract." By an amended answer it set up certain other representations as to her health made in her application, and that these representations were false when made.

As the application was not attached to nor incorporated in the policy, it was properly excluded from the evidence. Kentucky Statutes, section 679. We are not permitted to consider, therefore, the truth or falsity of any representations made in the application for the insurance, nor to consider whether these representations were material to the company. The exclusion of the application leaves us to consider alone the above set out provision of the policy contract proper, and the effect upon the validity of the contract of any prior serious disease or complaint of the assured for which she had been attended by a physician, or any of the specific diseases enumerated in the provision which she is alleged to have had.

Upon the trial the court found in its separation of the law and facts that the insured, prior to the issue of the policy, had not been attended by a physician for any serious illness, or for any pulmonary trouble. It will be noted that the provision quoted does not demand that the pulmonary trouble need have been treated by a physician in order to avoid the policy; but that the very existence of the disease, whether it had received medi-

cal attention or not, was sufficient to render the policy void. The evidence, however, upon the existence of consumption was conflicting, and we cannot say that the finding of the court was contrary to the evidence. There was in the record, however, certain proof as to illness upon which there could be no controversy. At the time of the issual of the policy and for a time prior thereto Estella Little had been insured in a health insurance concern of Nashville, Tennessee, to which she had presented certain written claims for weekly indemnity. These claims and her receipts thereupon are in evidence. On June 7th, she receipted for one week's illness ending upon that date. The name of the disease was specified as malaria. On June 14th she executed a like receipt. The name of the disease was specified as congestion of the kidneys. On July 13th, she executed such receipt for a week's illness, the name of the disease being specified as endometritis, which is defined in Foster's Encyclopaedic Medical Dictionary as an inflammation of the internal portion or lining membrane of the uterus. On August 26th, four days after the date of the policy, she executed a like receipt for one week ending upon August 26th, the name of the disease being specified as malaria. There is another bit of testimony about the woman's condition which is about as certain in its character as these receipts which have just been detailed. Her physician, Dr. W. R. Washburne, testified that on the 2nd of July, in the week prior to the one for which she received the sick benefit based upon endometritis, he and one Dr. Hearne were in attendance upon her; that upon that day he, Washburne, administered chloroform to her and that Dr. Hearne scraped her womb—which facts are also stated in a letter in the record addressed by the appellee to the appellant.

The far-reaching effect of the provision quoted in the policy is not hard to see. If the insured under this policy had as a child had scarlet fever, or pneumonia, or any of the manifold diseases to which humanity is subject, and had effected years ago a perfect recovery from it, with continued robust health afterward, and then had died from some wholly disconnected cause, the mere fact of the existence of such former disease, accompanied by a physician's treatment, would, under the bald terms of the contract, suffice to render it void. It is true that in the controversy at bar we are met with no such state of fact

as that supposed by the illustration; but the illustration is proper to indicate that an absolutely hard and fast construction of the contract as written would be beyond the question. The provision must be interpreted reasonably in favor of the insured and against the company which has framed the words of the contract. Mutual Benefit Life Ins. Co. v. Dunn, 106 Ky., 591, and other cases. We can find nothing in the terms of the provision quoted which would savor so much of deceit, or of an unconscionable bargain, as to render it void as against public policy; provided its interpretation be a reasonable one and one that would not work an unjust hardship or reduce its provisions to an absurdity.

The trial court found as a matter of fact that the assured had not suffered from any serious disease. We find ourselves unprepared to give any exact definition of a "serious disease." The record presents no testimony from any physician to show how serious might be the effect of, or how lasting might be the consequences of, the illnesses for which she had been treated shortly before the issual of the policy. The Century Dictionary defines a serious illness as "one attended by danger, giving rise to apprehension." In Brown v. Metropolitan Life Ins. Co., 65 Mich., 306, a serious illness is said to be "a grave, important, weighty trouble." In Drakeford v. Supreme Conclave K. D., 61 S. Car., 338, it is said that a sickness may be very bad and very sad and yet not serious; that any permanent or material impairment of health is a serious illness. Certainly the idea is not to be tolerated that mere temporary disorders or functional disturbances having no effect upon the general health or duration of life, should, within even the strict terms of the contract, be considered serious illnesses. Upon the other hand, there are certain diseases, such as consumption, that the ordinary mind, untrained in medicine, knows beyond question to be serious. Between these extremes there is a broad line of ills of varying natures, the seriousness of which can only be told with any degree of exactitude by those who are trained in the study of the human body and of the effect of the various diseases and illnesses upon it. We incline to agree with the South Carolina court's view that a serious illness in insurance terminology must be one entailing some permanent or material impairment of health; and there is no testimony in the record before

us of any one qualified to speak upon the subject, showing that any of the illnesses named were of such character, or that they might reasonably be expected to result in a permanent impairment of the health of the insured. In the light of the record, therefore, we cannot say that the diseases about which there is no contradiction in the testimony were such diseases as to fall within the category named as avoiding the policy.

The judgment of the trial court is affirmed.