# Little v. Security Mutual Life Insurance Company.

(Decided October 16, 1912.)

## Appeal from Hickman Circuit Court.

1. Insurance, Life—Action Upon Policy—Instructions.—In an action upon an insurance policy, an instruction was erroneous which permitted the jury to exercise their own beliefs as to what might be naturally and reasonably in accord with the practice usual among life insurance companies, in the absence of evidence upon which the jury might act. The jury must determine the matter, not from their own standard, but from the practice of those engaged in that business, and that practice can only be developed to the jury by evidence.

2. The jury should have been instructed upon issues and practices of which there was evidence, and not otherwise.

3. Judgment—Offer to Confess Not Deemed Admission.—Under the provisions of section 640, Civil Code, an offer to confess judgment is not to be deemed an admission of the cause of action, or amount to which the plaintiff is entitled, nor to be given in evidence upon the trial.

BENNETT, ROBBINS & THOMAS for appellant.

WM. MARSHALL BULLITT, CLARENCE C. SMITH, BRUCE & BULLITT, R. L. SMITH and R. B. FLATT for appellee.

Opinion of the Court by Judge Winn—Reversing.

On November 13, 1909, the appellee issued its policy of insurance upon the life of Wade S. Little, for $3,000, payable to his brother, John T. Little, the appellant. The insured died in April, 1910. In an action brought upon the policy, a jury returned a verdict in favor of the insurance company; and from the judgment on that verdict this appeal is prosecuted.

The answer of the insurance company said, in substance, that it issued the policy relying upon the statements made in an application therefor by Wade S. Little; that therein the said Little made certain representations as to his health, when he had last been attended by a physician, the diseases from which he had suffered and the like, which were untrue; that had truthful statements been made the policy would not have been issued. Upon the trial certain physicians testified that the insured had had several different diseases about which inquiry had been made in the application and which Little represented that he had not had. Dr. Moorman

Beeler testified that he had treated the assured constantly for six months for abscesses on his hip; that he had administered chloroform to the assured during an operation upon an abscess on his back; that in his, the physician's opinion, these abscesses resulted from diabetes which the insured Little then had; that he found a considerable amount of sugar in his urine and a considerable excess of urine, running sometimes a gallon and a half in twenty-four hours, as against the normal quantity of three quarts; that he had also treated him for a catarrhal condition of his throat; that this treatment had been along from 1904 to 1907; that he told (he thinks) the patient of the excessive flow of urine and the sugar in it; that the form of diabetes that Little had was one wherein the urine contains sugar; that ordinarily the sugar did not cut much figure, but that it was the complications which would come up in the course of the disease and bring death; that the patient might live a few years; that at other times the disease would bring about diseased conditions of the blood, and sometimes an affection of the brain; that these abscesses were of common occurrence in diabetic patients. Dr. W. W. Richmond (testifying for Little) testified that in cases of diabetes with sugar in the urine, complications frequently would occur in the form of paralysis and abcesses; that such cases would continue from bad to worse, sometimes lasting from ten to fifteen years, the patient wasting away from day to day, month to month and year to year to a nervous wreck, ending in death. Dr. Richmond's testimony, however, for the plaintiff conduced to show that Little had not had these diseases, and that he was a robust, strong and vigorous man. The question of the truth or untruth of the statements in the application was for the jury to decide. We, therefore, pass this matter without further discussion.

The appellant relies for a reversal upon a number of alleged errors. In the first place, he urges that the defendant's answer did not set up that the application named in the answer was in writing, or that it had been signed by the insured. Waiving any consideration of the sufficiency of the pleading, we rest this feature of the case upon his agreement in the record, which is as follows: "It is agreed that in this case a correct copy of the application for the policy and the medical examination was attached to the policy sued on, and that said

copy may be introduced as evidence, and to have the same effect as if said correct copy had not been attached, and the same effect as if the original application had been introduced or offered, subject to competency or relevancy." This agreement speaks for itself.

The remainder of appellant's complaints rest upon the instructions. It is, therefore, necessary to set them out. They follow:

"No. 1. The court instructs the jury to find for the plaintiff the sum of $3,037.50, being the face value of the policy sued on, together with 6 per cent interest thereon from the 19th day of July, 1910, the date of filing this suit, unless the jury further believe from the evidence the state of facts set out in instructions No. 2 or No. 3.

"No. 2. The court instructs the jury that in the application which the assured, Wade S. Little, signed in order to procure the policy of insurance sued on the following questions were asked him and to them he made the following answers, to-wit:

"2nd. 'How long since you were last attended by a physician, or consulted one?' Ans. 'Six years ago.' 3rd. 'For what difficulty or disease?' Ans. 'Rheumatism.' 4th. 'Give the name and residence of such physician?' Ans. 'Dr. W. W. Richmond, Clinton, Kentucky.' 5th. 'Give the name and residence of your medical advisor or family physician?' Ans. 'Dr. W. W. Richmond, Clinton, Kentucky.' 6th. 'Have you ever been afflicted with any of the following named diseases or conditions, answer yes or no to each question, Malaria, No, Severe headache, No, Bronchitis, No, Immoderate flow of urine, No, Bleeding piles, No, Abscesses, No, Discharge from the ear, No.' 7th. 'Have you ever been told or are you aware that you ever had albumen or sugar in your urine?' Ans. 'No.' 8th. 'Have you ever been an inmate of an infirmary, sanitarium, institute, asylum, or hospital?' Ans. 'No.' 9th. 'Have you now or have you ever had any illness, injury, disease or disorder other than is stated above?' Ans. 'No.'"

"If the jury, therefore, believe from the evidence that the answers given to said questions, or any of them, were, without the knowledge of the defendant insurance company, untrue in any particular, in which true answers would have stated facts or conditions which were reasonably and ordinarily calculated to shorten the life or increase the probability of the death of said Wade S.

Little, or which, if known to the defendant insurance company, it, acting naturally and reasonably in accordance with the practice usual among life insurance companies, would not have entered into the policy contract upon the terms and the annual stipulated premiums, as shown in the policy sued on, then the law is for the defendant and the jury should so find.

"No. 3. The court further instructs the jury that if you believe from the evidence that the answers given by the assured, Wade S. Little, to the questions set up in instruction No. 2, or any of them, were untrue and were known by said Wade S. Little at the time of the making of the application, or the receipt of said policy to be untrue and were made by him for the purpose of deceiving the defendant insurance company and procuring the policy thereby, and the defendant, insurance company was deceived into issuing said policy by such untrue statement or statements which were known to said Wade S. Little to be untrue, the law is for the defendant and the jury should so find."

No complaint is made of instruction No. 1. The objections urged to 2 and 3 are as follows:

1. That the second instruction left it to the jury to say what the company naturally and reasonably would have done, in accordance with the practice usual among life insurance companies, had the questions been answered truthfully, when there was no proof before the jury from which they could ascertain the company's such probable course.

2. That the company introduced no proof to show its ignorance of the falsity of the insured's statements, or that it was deceived into issuing the policy; and that, therefore, instruction No. 3 should have not been given.

3. That instruction No. 2 submitted to the jury the question of the falsity of certain of the insured's answers as to which no evidence had been introduced; and that the jury was left to determine without evidence the company's probable course had it known the truth.

4. That the plaintiff was entitled to an instruction offered by it asking a recovery of $151.02, the premium paid on the policy, in case the claim on the policy itself was not allowed.

Upon the first complaint: The complaint is well taken. The jury were permitted by the second instruction to exercise their own beliefs as to what might be

naturally and reasonably in accord with the practice usual among life insurance companies. If the company desired the benefit of this instruction, it should have introduced evidence upon which the jury might act. As was said in the case of United States Casualty Co. v. Campbell, 148 Ky., 554, that what the company would do under a given set of circumstances is not a matter of speculation. In that case, this court declined to reverse a judgment against the insurance company, because it had failed to introduce testimony showing the custom and practice of companies. The same idea is applied in the case of Provident Savings Life Assurance Society v. Whayne's Administrator, 131 Ky., 84, where it was said that what the insurance company probably would have done was to be determined, not by what it might say afterward about it—for manifestly that would be a very unsafe standard—but by what was the usual course of those engaged in such business under similar circumstances; and that the jury must determine the matter not from their own standard, but from the practice of those engaged in that business. That practice can only be developed to the jury by evidence. Failing the introduction of such testimony, so much of the instruction as is follows should have been omitted: "or which, if known to the defendant insurance company, it acting naturally and reasonably in accordance with the practice usual among life insurance companies would not have entered into the policy contract upon the terms and annual stipulated premiums as shown in the policy sued on." If upon retrial testimony be introduced warranting a submission of this feature of the case to the jury, that portion of the instruction should be left in.

Upon complaint No. 2: This argument does not appeal to us. It is in substance to say that though the insured told the company certain untruths as to the condition of his health and thereby secured the policy, the company could not resist recovery, because it did not bring its officers and agents to swear that none of them knew that the insured had answered falsely. When it is once proven that the insured answered falsely, the burden should rest upon the plaintiff to show that the insurance company knew otherwise than that his statements were true.

Upon complaint No. 3: This complaint is well founded. Under the second instruction there were two

conditions named under which the jury should find the policy void—(a) when the truth would have disclosed conditions which were reasonably and ordinarily calculated to shorten the life, or increase the probability of the death of the assured; and (b) when the truth would have disclosed such facts or conditions to the company as that acting naturally and reasonably in accordance with the practice usual among life insurance companies, it would not have issued the policy. There was evidence in the record that the insured had had several of the diseases named in the instruction. There was no evidence that he had had the others. There was only evidence that one of them, diabetes, was reasonably and ordinarily calculated to shorten life. There was no evidence of the usual practice of life insurance companies in issuing policies. Ordinarily, a jury is not supposed to be informed as to whether a disease may be serious in respect to a contemplated insurance upon the life of the one suffering from the disease. The probable effect of the given disease upon human life must be ascertained from testimony. Metropolitan Life Insurance Company v. Little, 149 Ky., 717. The only testimony here about a disease coming within the category named in (a) supra, was diabetes; and the question and answer upon diabetes and whether that answer was false, alone should have been submitted to the jury. Had the company introduced testimony tending to show that the assured's answers as to any other disease were false, then the instruction should have embraced such other diseases provided and not otherwise than (a) that they were shown by the testimony to be reasonably calculated to shorten life, or (b) that they were such as that the company would have declined to issue the policy acting naturally and reasonably in accordance with the practice usual to life insurance companies as developed by the evidence. The same general observations apply to the questions and answers not addressing themselves to specific diseases, such as, to illustrate, the query as to whether the insured had been in a sanatarium. However false the assured's answer might be, it could hardly be said that the being in a hospital would of itself tend to shorten life; while on the other hand, a custom might reasonably be shown of life insurance companies to reject all who had had hospital experiences, thus surely rejecting the chaff though at the probable expense of

some sound grain with it.  In this connection it may be observed that there are certain diseases of a character so sure to shorten life—tuberculosis is a fair example of the class—as that proof of the existence of the disease without any direct testimony of the baneful effect of it, would suffice to take the case to the jury; but as to the great majority of ills, the ultimate effect of which upon human life is uncertain, or is unknown to the average mind, the company, defending upon false answers as to their existence should show (a) that their effect is to shorten life, or (b) that it is the custom of insurance companies to reject the applicant because of their existence.  The question comes back in the end to one of materiality, which is for the jury.  Provident Savings Life Assurance Society v. Whayne, supra.  The company, in order to take its defense to the jury, must depend upon either the well-known or proven shortening effect of the disease upon human life, or that, acting naturally and reasonably in accordance with the practice usual among life insurance companies, it would not have made the insurance contract had the applicant answered truthfully.  And the latter alternative need not turn upon disease alone, but may turn upon the prior rejection of the insured by some other company, the amount of insurance he may be carrying, or many other questions addressing themselves to the reasonable and prudent business practices of those engaged in the life insurance business.  Provident Savings Life Assurance Society v. Whayne, supra.  The jury should have been instructed as indicated upon issues and practices of which there was evidence, and not otherwise.  Louisville Ry. Co. v. Beckner's Admr., 113 S. W., 90, Hartford Mill Co. v. Hartford Tobacco Warehouse Co., 121 S. W., 477, and other cases.

Upon complaint No. 4:  This complaint cannot be upheld.  In the answer the defendant said that it tendered the sum of $151.02, the premium paid on the policy.  It was not an admission of liability under the policy, but in substance a denial of liability under it.  There is no other reference in the case to this matter down until the instructions were being offered.  If this statement in the answer had any effect whatsoever, it could be nothing more than an offer to confess judgment for that sum.  Had the plaintiff accepted the premium in lieu of that for which he sought judgment, he, of course, could not have

prosecuted the action upon the policy. Under the express provisions of section 640, Civil Code, an offer to confess judgment is not to be deemed to be an admission of the cause of action or amount to which the plaintiff is entitled, nor to be given in evidence upon the trial. As was said in the case of Kelley v. Combs, 22 K. L. R., 365, if the offer is not accepted the parties stand as if it had never been made.

For the reasons given the judgment of the trial court court is reversed for a new trial consistent herewith.