## Security Mutual Life Insurance Company v. Little.

(Decided February 5, 1914.)

### Appeal from Hickman Circuit Court.

Insurance, Life—Evidence—Expert Testimony—Right of Jury to Pass Upon.—Where in an action on a life insurance policy the defense is based upon fraud and misrepresentations contained in the application, the materiality of said representations being

proven by expert testimony, such testimony must be absolutely uncontradicted in the strictest sense of the term in order to authorize the court to deprive the jury of the privilege of passing thereon.

BRUCE & BULLITT, KEITH L. BULLITT and R. L. SMITH for appellant.

ROBBINS & ROBBINS and BENNETT, ROBBINS & THOMAS for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

The appellee, John T. Little, sued appellant, The Security Mutual Life Insurance Company, in the Hickman Circuit Court, for three thousand dollars, the amount of a policy of life insurance upon the life of appellee's brother, Wade S. Little, of which policy appellee was the beneficiary. The first trial resulted in a verdict and judgment for defendant, which upon appeal was reversed by this court, for error in the instructions. See Little v. Security Mutual Life Insurance Co., 150 Ky., 35, 149· S. W., 1112. A second trial resulted in a verdict for the plaintiff, and defendant appeals.

A reversal is sought upon the ground (1) that the trial court should have sustained defendant's motion for a peremptory instruction at the close of the evidence; and (2) upon the ground that the verdict is flagrantly against the evidence.

The company defended upon the ground of fraud and material misrepresentations in procuring the contract of insurance relying upon the falsity of certain answers to questions contained in the application upon which the policy was issued. The questions and answers referred to, were as follows:

"Q. How long since you were last attended by a physician, or consulted one? A. Six years. Q. For what difficulty or disease? A. Rheumatism. Q. Have you ever been afflicted with any of the following named diseases or conditions? Immoderate flow of urine? A. No. Abscesses? A. No. Q. Have you ever been told, or are you aware that you have ever had albumen or sugar in your urine? A. No. Q. Have you ever been an inmate of a sanitarium? A. No. Q. Have you now, or have you ever had any illness, injury, or disease, or disorder, other than as stated above? A. No."

The policy was issued in November, 1909. The evidence for the defendant was to the effect that the in-

sured had been treated by physicians for an abscess on the back, for which trouble he was operated on in October, 1904; that he was treated in 1905 and 1906 for boils and a carbuncle; that at that time insured had symptoms of diabetes, an immoderate flow of urine, and sugar in the urine; that in the fall of 1905, he was operated on in the sanitarium of Dr. Rudd in Fulton, for an abscess, being confined there about three weeks. One of said physicians also testified that he thought he had informed the insured of the presence of albumen and sugar in his urine in 1905 or 1906, but of this the witness would not be positive. There was also proof that the insured was in 1907 treated for throat trouble, and in 1906 for ear trouble. Having established by its evidence the falsity of the representations relied upon, the defendant then proceeded to show that, acting naturally and reasonably in accordance with the practice usual among life insurance companies, it would not have made the insurance contract, had the applicant truthfully answered. Upon this issue, Dr. J. Moorman Beeler was asked :

"Q. Now, then, if Wade Little, in his application for this policy and medical examination, had stated that he had chronic abscesses on his back; that he had excessive flow of urine; that he had sugar in his urine, and carbuncles on his neck; and that he had been treated and operated on three different times within six years prior to the application, would the life insurance company, in the usual course of business—and that he had diabetes—would they, in the usual course of business, have issued the policy to him if that fact had been made known in his application? A. No, sir, I don't think they would."

Dr. James W. Guest, Medical Director of the Commonwealth Life Insurance Company, of Louisville, was asked:

"Q. Suppose that a man applies for life insurance in the year 1909; and in 1904 had been afflicted with abscesses so severe that they necessitated an operation and the administration of chlorofarm; and about six months after the operation, had again suffered from abccesses; and in about 1907 had been treated for diabetes, and his urine showed a considerable amount of sugar; and had been treated by several doctors between the years 1904 and 1909, for *rheumatism,* chronic throat trouble, abscesses, and diabetes; now then, are you able to state from your knowledge of the practice and usage of life insurance companies generally, whether or not :

upon an application for life insurance made by that man about November, 1909, information of the above mentioned facts, *or any of them,* would have led to a rejection of the risk?

"A. Yes, as Medical Director of the Commonwealth Life Insurance Company, I would unquestionably have rejected the application outright.

"Q. Please state what was the practice and usage of life insurance companies generally under such a state of case?

"A. The custom is to reject such applicants."

Dr. Eveyln Porter, Medical Director of the Mutual Life Insurance Company of New York, was asked the same question and gave like answers.

It is the principal contention of the company that it established by uncontradicted evidence the *falsity* of the answers (1) that the insured had not been attended by or consulted a physician within six years before the date of the application; (2) that he had not been afflicted with abscesses; and (3) that he had not been an inmate of a sanitarium. Also, that it established by *uncontradicted* evidence the *materiality* of the representations proven by it to have been false. And, that, therefore, it was entitled to a peremptory instruction.

An examination of the hypothetical questions propounded to the experts who testified concerning the practice and usage of insurance companies, will disclose that not all the facts therein stated, were proven by uncontradicted evidence. For instance; the evidence was not uncontradicted as to whether the insured had suffered with diabetes. But, appellant contends that these witnesses answered that the application would have been rejected according to the usual practice among insurance companies, if *any* of the representations made, had been known to be untrue.

However, when Dr. Hunt was introduced as a witness in plaintiff's behalf, he was interrogated by counsel for the defendant, and on cross-examination, testified as follows:

"Q. If a man were to apply for life insurance, and it were to appear that he had had two abscesses; one on his back and one on his hip, which necessitated an operation and the administration of chloroform; also had and immoderate flow of urine, and sugar in his urine; a chronic throat trouble; even though it might not appear

that those were caused by diabetes, would or not these symptoms in themselves, regardless of whether they came from diabetes or some other trouble, have been sufficient to cause the insurance company to reject the risk?

"A. That would be owing to the circumstances about that.

"Q. What would be the ordinary action of insurance companies under those kind of cases, where a man appeared to have had two abscesses on the body, carbuncle on the neck, sugar in the urine and chronic throat trouble, what would be the action of the company generally on those facts only; regardless of whether or not they found out positively that he had diabetes?

"A. If he had had those things, *and had recovered from them,* thoroughly, they possibly would issue the policy."

In that connection, it was shown by Dr. Richmond, the physician who examined insured, in behalf of the company at the time of the application, that the insured was then a robust man, weighing about two hundred pounds, of florid complexion, and in perfect health so far as could be discovered; that his urine was tested, and no evidence found of the presence therein of either sugar or albumen; and that he did not have diabetes. It was also shown that insured did not die as the result of any of the conditions mentioned in the representations claimed to have been false; but was taken suddenly with apopletic fever, and after he recovered, went out in cold weather and contracted pneumonia, from which he died.

It was also shown by Dr. Lee, Dr. Hunt and Dr. McMorris in answer to hypothetical questions based upon the condition of the insured, as testified to by the examining physician, Dr. Richmond, at the time of the application, that insured did not at any time have diabetes.

There was, therefore, evidence to the effect that notwithstanding the insurance company had had knowledge of the falsity of the particular answers, the falsity of which was proven by uncontradicted testimony, still the company would have issued said policy, if insured had recovered from the effects of his previous disorders; and that he had recovered therefrom, is uncontradicted by any witness.

Moreover, the evidence of Dr. Guest and Dr. Porter is otherwise contradicted. As has been seen, the insured stated in the application that he had suffered from a *severe* attack of *rheumatism.* Notwithstanding this, the

insurance company issued the policy. In the hypothetical question asked Dr. Guest and Dr. Porter, rheumatism is included in the diseases, *any of which,* they stated, would have led to the rejection of the application. So the answer manifestly was not true in respect to *rheumatism,* for the company *did* issue the policy knowing that insured had had a severe attack of that disease.

It will thus be seen that there was sufficient contradiction of the evidence to justify the court in permitting the jury to weigh the expert testimony offered in respect of the practice and custom of insurance companies in the acceptance and rejection of risks under the state of case presented. A consideration of the nature of such testimony will demonstrate the desirability of submitting same to the jury unless it is *absolutely* uncontradicted, in the strictest sense of the term. This testimony is that of an expert, giving to the jury his judgment, based upon reasoning, in regard to certain facts presumably proven by the other witnesses; and upon a subject of such nature, that enlightenment and aid to the jury is presumed, because of the expert's special training, experience and skill in matters not of common and general knowledge. In a sense, the expert is permitted to state his judgment because he is believed to possess technical knowledge and experience which renders him *more competent to form a judgment* than the jury; and his action in stating such such judgment partakes of the nature of one of the prerogatives of the jury. The history of the development of expert testimony abounds with instances or resistence to the introduction of its use, upon the ground that the province of the jury was being usurped; but it has finally come to be recognized as a necessity in matters where the reasoning involved in forming a judgment, requires technical or special knowledge and experience. But, before a jury should be deprived of the right to pass upon and weigh such testimony, it should clearly appear that there is absolutely no conflict in such testimony nor in the evidence upon which it is based; and where it is sought to take a case from a jury upon expert testimony alone, this rule should be applied in its strictest sense.

The evidence in respect of the materiality of the false representations made by the insured was such as to authorize the submission of that issue to the jury; and

the court properly overruled defendant's motion for peremptory instruction.

As to appellant's second contention, the evidence was conflicting and we cannot say that the verdict is so flagrantly against the weight of the evidence as to authorize us to disturb the finding of the jury.

The judgment is, therefore, affirmed.