## Wadkins v. Commonwealth.

(Decided February 19, 1929.)

A. S. COOPER, CHARLES H. BRUCE and L. D. BRUCE for appellant.

J. W. CAMMACK, Attorney General, and SAMUEL B. KIRBY, JR., Assistant Attorney General, for appellee.

Opinion of the Court by Judge Clay—Reversing.

Cale Wadkins appeals from a judgment convicting him of manslaughter and fixing his punishment at ten years' imprisonment.

The commonwealth proved that the deceased, Harrison Morris, was shot and killed by appellant at the latter's home. It further proved that the killing was done with a shotgun, and that the deceased was shot in the back of his left shoulder, and in the left side of his head and neck behind the ear, and that some of the shot struck his cheek and the left side of his nose. Appellant's account of the affair is as follows: While sitting on his front porch with his wife, he saw Harrison Morris approaching with a shotgun on his shoulder. Appellant then went inside the house. As soon as he left, Morris began to quarrel with his wife, and wanted to know why she had let her young ones run over his. Morris wanted to know where Ernest Wadkins, appellant's son, was, and appellant's wife told him that he had gone to work over at his grandfather's house. Applying a vile epithet to Ernest, Morris said he was going to kill him. Morris then started off, and Mrs. Wadkins began screaming. Appellant then went through the house and got his shotgun. He was aiming to go out the kitchen door and tell

his boy to get away before Morris arrived. While standing inside the door, Morris discovered him and drew his gun on him over his shoulder. Appellant then fired. According to Ruby Abdon, who was at appellant's home, Morris wanted to know of Mrs. Wadkins what made her kids run over his. Mrs. Wadkins said that she did not know that they did. The last thing that she heard Morris say was that he was not mad either. He then turned to leave Mrs. Wadkins. He then said something that she did not understand. Then she heard Mrs. Wadkins holler for Cale. She could not understand what Mrs. Wadkins said, but she was screaming. While Mrs. Wadkins was screaming, Harrison Morris came around the house. While stepping out the front door on the front porch, she heard a shot fired which sounded like it came from the kitchen or the kitchen door. Whenever she saw Harrison Morris he had his gun on his shoulder. Ellis Traylor, the father-in-law of Harrison Morris and Cale Wadkins, testified that Harrison Morris came to his house between 1 and 2, and when he came he carried a shotgun on his shoulder. When he came he was hurt and looked like he was drunk and smelled as if he had whisky on him. Ernest Wadkins testified that he was at his grandfather's when Harrison Morris arrived. He had a shotgun on his arm. He acted like he was drunk and he smelled whisky on him. Ruby Abdon, being recalled, testified in rebuttal that she waited on Harrison Morris after the shooting, but did not smell any odor of whisky on his breath. George Crisp, a deputy sheriff, testified that he was at the home of Harrison Morris the day following the homicide and examined his body. He had been shot in the back of the head and through the face. Over the objection of appellant he was permitted to testify as follows: "Q. I will ask you whether or not in your judgment it would have been possible for to have shot him in the way he was shot by it being done the way Cale Wadkins has testified it was done, they being in the position he has testified they were when the shooting took place? A. No, sir, he was shot in the back of the neck and the side of the head here along back of the ear, along back here." Other witnesses testified in rebuttal as to the places where Harrison Morris was shot, and some of them stated that they were with him after the shooting and smelled no whisky on his breath.

There is no merit in the contention that the jury should have believed appellant, and that its verdict is flagrantly against the evidence. Because of the bias of the accused, and his vital interest in the result, the jury is never required to accept his version of the homicide, and particularly is this true where, as here, the physical facts and attendant circumstances are such as to render his story improbable.

There is no escape from the conclusion that the court erred in permitting Crisp, the deputy sheriff, to testify that it was impossible for the shooting to have occurred in the manner testified to by appellant. Ordinarily, a witness should state facts within his personal knowledge, and not be permitted to give his opinion or conclusion upon matters within the scope of common knowledge and experience, where all the relevant facts can be introduced in evidence, and the jury are competent to draw a reasonable inference therefrom. American Acc. Co. v. Fidler's Adm'x, 35 S. W. 905, 36 S. W. 528, 18 Ky. Law Rep. 161; Louisville & N. R. Co. v. Conn, 179 Ky. 478, 200 S. W. 952; Security Mutual Life Ins. Co. v. Little, 157 Ky. 276, 162 S. W. 1131. The danger involved in receiving the opinion of the witnesses is that the members of the jury may substitute such opinion for their own. Hames v. Brownlee, 63 Ala. 277; Coons v. Pritchard, 69 Fla. 362, 68 So. 225, L. R. A. 1915F, 558. Here the witness was not an expert. It was not only possible to do so, but all the relevant facts were actually laid before the jury. When this was done, the members of the jury were just as well qualified as he to draw a proper conclusion from the facts. In the circumstances the evidence complained of was not admissible. Not only so, but its admission was prejudicial. The commonwealth's case was predicated on the improbability of appellant's story. In the circumstances, evidence by an officer of the law that the shooting could not have occurred in the way testified to by appellant necessarily added the weight of his judgment to the theory of the commonwealth, and could not have failed to exercise an improper influence on the minds of the jury.

The rejection of certain evidence is complained of, but there was no avowal of what the witnesses would say, and the error, if any, cannot be reviewed.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.