## Washington v. Commonwealth.

(Decided June 10, 1930.)

HOWARD BLACK, T. B. ROBERTS and GEORGE L. PICKETT for appellant.

J. W. CAMMACK, Attorney General, and SAMUEL B. KIRBY, Jr., Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Marshall Washington appeals from a judgment convicting him of manslaughter and fixing his punishment at eight years' imprisonment.

The homicide occurred at the home of Warren Green at Todd's Point near Simpsonville, in Shelby county. Appellant boarded there, and the other members of Green's household consisted of his wife, Delia, his son-in-law, Sam Howard, the deceased, two daughters, Belle Green and Bessie, the wife of the deceased,

and a young son by the name of Charlie. There were three rooms in the Green home, two bedrooms and a kitchen. On the Sunday night just before Christmas, 1928, appellant and the other members of the household were in the front bedroom playing a graphophone and laughing and talking. Shortly after 11 o'clock Warren Green and his daughter, Bessie Howard, went out into the yard. After they left appellant asked Belle Green, who was there at the victrola, to play "Blue Heaven," stating that he had heard it at the state fair, and thought it was pretty. Belle began playing the piece, and Howard told appellant that he had never heard it. Appellant replied that he had. Thereupon Howard applied a vile epithet to appellant, and told him he was just a "God damn liar." Appellant protested that he had heard it, and then Sam struck appellant. According to Delia Green, both appellant and Howard were standing up at the time. Howard hit appellant under the eye, and it raised a knot. Appellant grabbed his eye with his hand. She did not think it knocked him down. She then went out of the room. She saw no knife on that occasion, but had seen appellant with a Barlow knife. While appellant would take her daughter Belle around to places, he was not courting her. He was a married man and had two children. So far as she knew, there had been no bad feeling between the two. When she returned to the room, Howard was lying across the bed with his head next to the wall. She never saw any weapon in Howard's hand or around his body. Bessie Howard, the wife of the deceased, who was not present during the difficulty, testified that, when she left, appellant and her husband were apparently in a good humor. She was out of the house about 20 minutes. When she returned, Sam was on the bed dead. Some of the pillows were off the bed. There was blood on one of them, and the bedclothes were tumbled up. She saw no blood except on the pillow. She did not see any blood on the floor, and did not look to see. Belle Green corroborated her mother as to the circumstances leading up to the trouble. She testified that, when Howard struck appellant, he knocked him down across the bed, and as she ran out he was choking appellant. When she returned, Howard was lying across the bed with his feet on the floor. There was no blood on the floor, but there was blood on the counterpane at the foot. She did not know how much, but there was "right smart." There was not any blood on the pillow. The

bed was mussed up a little. So far as she knew, there had been no fight or falling out between the two men previous to that time. Neither of them had been drinking that night. She did not know what happened after Howard struck appellant and grabbed him. When she went out the door, Howard was on top of appellant, and appellant was asking Howard to turn him loose. He told Howard to quit choking him.

After the trouble, she, appellant, and her father went over to Mr. Middleton's and waited there until the officer came. Mr. Middleton, who lived a quarter of a mile away, testified that appellant, accompanied by Warren Green and one of Green's girls, came to his house and said he was in trouble, and wanted to do some telephoning. He stated that he had killed Sam Howard. He smelled something on appellant's breath, but did not know whether it was liquor or not. He did not notice any cuts, abrasions, or wounds about appellant's body, and thought he was close enough to have seen them. After he came, he telephoned to the sheriff. Appellant also wanted him to telephone Sam Howard's brother. Mrs. Middleton testified that she could not see any blood or anything on appellant's clothes from where she was. Appellant said he had killed Howard, and, when she asked him if he realized what he had done, he said, "Yes ma'am, Mrs. Middleton, I had to do it." The jailer of Shelby county testified that he was close enough to observe appellant's condition when he was brought to the jail. He did not notice his clothing. He did not see a knot on his face.

M. M. Haley, who arrested appellant, stated that he never noticed anything unusual about his clothing. He did not remember that he noticed anything about his eye. George Bryant, who called at the Green home sometime between 5 and 6 o'clock of the morning following the homicide, found Howard's body lying across the bed with his feet on the floor. His head was against the wall across the bed. The bedclothing was bloody. The bed looked like it had been made up. There was blood all around back of the bed next to the wall. He did not think there were any pillows under his head. He saw no blood at any other part of the room. Howard's right arm was cut to the bone. G. W. Saffell, Jr., the undertaker, who did not see the body in the house, testified that Howard was cut in several places, and the leaders in his hand were severed. There was also a cut across the inside of

his hand, and he was cut almost entirely around his neck. This cut nearly severed his head. Warren Green, who also testified for the commonwealth, stated that he had never known of any difficulty between appellant and Howard before. During the summer prior to the difficulty appellant said he did not want Sam to keep bothering him because he did not want to do anything to him. Appellant just said he did not want to have any trouble with him. About a year before the killing appellant said, if he ever had any trouble, he would not have any trouble at his house.

On the other hand, appellant, after detailing the circumstances leading up to the difficulty just as they had been told by the other witnesses, testified that Howard jumped in, hit him in the eye, and knocked him down. In the struggle he and Howard fell across the bed. Howard grabbed him around the throat and commenced choking him. At that time his eye was swollen and almost out. They fell on the bed, and Howard kept choking him. Howard was on top. All the time Howard was choking him Howard was calling him vile names, and saying he was going to kill him. He then grabbed his Barlow knife and cut Howard. He then went into the other room, and they got some antipain linament and rubbed it on his eye. The knot he then had on his eye was caused by the lick that Howard struck. Shortly after the trouble, he left with Warren Green and Belle to go to Mr. Middleton's. He asked Mr. Middleton to call for Howard's brother. While there, Mr. Middleton telephoned to the sheriff. They remained until the officer came. So far as he knew, Howard had not been drinking. On being asked to tell the jury whether or not he was afraid Howard was going to do him some great bodily harm, he said, "Yes, sir, he was already doing it." He never told Warren Green at any time that, if Howard ever said anything to him, he was going to kill Howard. He expected that he and Howard were about the same weight. At the time of the argument he had the knife in his pocket. So far as he knew, he got no blood on him. He had not seen his knife since he was over at Mr. Middleton's. He did not know what had become of it.

It is first insisted that all the evidence shows that appellant acted in self-defense, and, that being true, the verdict of the jury is flagrantly against the evidence. In the first place, the witnesses who testified that the blow given by Howard produced a knot on appellant's eye

were contradicted by Mr. Middleton and the jailer, who said that they observed appellant and saw no knot nor bruise of any kind on his face. Aside from this, it must not be overlooked that, while the witnesses for the commonwealth and appellant gave substantially the same evidence as to what occurred prior to the cutting, and showed that Howard was the aggressor, none of them, with the exception of appellant, were present when the cutting took place. It is not pretended that Howard had a weapon of any kind. While the bed was "mussed a little," its condition did not indicate that a severe struggle had taken place. Appellant admits that there was no blood on him, and that is not probable if, as appellant says, Howard was on top of him when cut. Moreover, the leaders in Howard's hands were cut in several places, and there was a cut across the inside of one of his hands. This would indicate that, instead of being engaged in choking appellant, he was using his hands to ward off the blows with the knife. Because of the bias of the accused, the jury is never compelled to accept his version of the homicide, and particularly is this true where, as here, the physical facts and attendant circumstances are such as to render his story improbable. Wadkins v. Commonwealth, 228 Ky. 106, 14 S. W. (2d) 390. Although Howard was the aggressor, yet, in view of the fact that he was not armed, and all the circumstances tending to contradict appellant, the jury had the right to believe from the evidence that it did not appear to appellant in the exercise of reasonable judgment to be necessary to cut or kill Howard in order to avert the danger, real or apparent. We are therefore constrained to hold that the verdict is not flagrantly against the evidence.

Another contention is that the attorney for the commonwealth was guilty of improper conduct in repeatedly asking questions to which an objection had been sustained. The record discloses that the objections were sustained, not on the ground that the evidence sought to be introduced was inadmissible, but on the ground that the questions were leading, and that whenever the question was in proper form the objection was overruled. In the circumstances the case is not one where counsel for the commonwealth persistently pursued a line of interrogation which the court had ruled to be wrong.

The contention that the self-defense instruction is erroneous is without merit. Fairly construed, it made appellant the judge, in the exercise of a reasonable dis-

cretion, not only of the danger to which he was subjected, but of the means necessary to avert that danger, and this was sufficient.

Judgment affirmed.