MARY J. HAWKES *vs.* WILLIAM A. LACKEY & another.
SAME *vs.* SAME.

Suffolk. December 2, 1910. — January 5, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Equity Jurisdiction,* Laches, For an accounting, To relieve from results of breach of confidence by fiduciary, To re-form promissory note. *Bills and Notes. Evidence,* Admissions by conduct. *Equity Pleading and Practice,* Interest. *Interest.*

There was no laches in the bringing in January and July of 1909 of two suits in equity seeking an accounting as to thirteen transactions occurring during a period from October, 1903, to July, 1907, as to investments and reinvestments of sums of money and securities given by three elderly women of practically no business experience to the defendant, a distant relation about thirty years of age, educated as a lawyer, with whom they had dealt from a feeling of blind and unquestioning trust and who knew and intended that they should so act.

Two elderly women of intelligence and education, who knew the character and meaning of interest on money and of the time at which a note is payable but had had scarcely any business experience and were almost like children in business matters, trusted implicitly in certain business transactions a man about thirty years of age, who was a relation of theirs and for a long time had been intimate with an aunt, with whom they had lived up to the time of her death, and likewise had been trusted by her, and who had had a college and law school education and knew of the extent of their business experience and capacity. The aunt died leaving her property to her two nieces. The man at that time owed the aunt's estate $2,050. Knowing that the nieces would act upon his suggestion with a feeling of blind and unquestioning trust in him and would desire to accommodate him, the man, without making any false or fraudulent representation of fact in the matter, and without any coercion or inducement on his part, and also without any warning or discussion or suggestion that they should consult an attorney who he knew was acting for the aunt's estate, for his own advantage and not in the interest of the aunt's estate asked each of them to accept for her share of the debt due to the aunt's estate a ten year note for $1,025 bearing interest at four per cent, and, without considering or appreciating the possible effect of their accepting the notes, they complied with the request because of their unquestioning trust in him and of a desire to accommodate him and partly from a desire to help certain speculations which they knew the man was making and possibly to participate therein. Thereafter the women received various semiannual payments of interest at four per cent. Three years after the giving of the note a suit was brought by one of the sisters on her own behalf and as assignee of the claims belonging to the other sister and to the estate of the aunt for an accounting and for a cancellation of the notes, and the judge who heard the case found that the women were induced to receive the payments of interest by undue influence of the defendant, and that the notes should be re-formed into demand notes carrying interest at four per cent until the filing of the bill in equity and thereafter at six per cent. *Held,*

that the bill was not barred by laches and that the finding and decree of the judge were warranted.

Wherever two persons stand in such a relation that, while the relation continues, confidence necessarily is reposed by one and the influence which naturally grows out of that confidence is possessed by the other, and the confidence is abused or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, although the transactions could not have been impeached if no such confidential relations had existed.

The mere fact that, after an elderly and confiding woman received from a young man in place of a debt owed by him to an estate in which she was beneficially interested a ten year promissory note of which he was the maker and she was the payee, which was given under such circumstances as to constitute a breach of a fiduciary relation in which the maker stood toward the payee, the payee received certain payments of interest upon the note, is not conclusive evidence of an election on the part of the payee to confirm the taking of the note, but, at strongest, can amount only to an admission by her, and, like all bare admissions, is merely evidence to be considered on the question whether such election was made.

Neither the mere fact that an elderly woman, who was the payee of a check, passed the title to it to a man who stood in a relation of confidential business adviser to her by passing it through his father, nor the fact that an attempt was made first to indorse the check to the father and then to have it indorsed by the father to the confidential adviser, is conclusive evidence that the amount of the check was lent to the father by the payee; but at most it is evidence to be considered on that point.

A suit in equity was referred to a master, who in his report found a certain sum of money to be due to the plaintiff, which was made up of certain payments made to the defendant by the plaintiff and simple interest thereon. The report was confirmed and a final decree was made directing the defendant to pay to the plaintiff the aggregate amount found due by the master and interest thereon at six per cent from the date of the filing of the report. *Held*, that under R. L. c. 177, § 8, the plaintiff had a right to have interest so computed.

TWO BILLS IN EQUITY, the first filed in the Superior Court on January 28, 1909, and amended on November 19, 1909, against William A. Lackey (hereinafter called the defendant) and the trustee under the will of one Mary A. Alley, seeking an accounting by the defendant Lackey as to certain business transactions carried on by him with and for the plaintiff, a transfer of certain securities which were alleged to belong to the plaintiff and wrongfully to have been retained by the defendant, the establishment of a debt due to the plaintiff from the defendant, and also to reach and apply in satisfaction of debts so established an interest of the defendant in a trust under the will of Mary A. Alley. In the second bill, which was filed in the same court on July 7, 1909, like remedies were sought on like grounds by the same plaintiff as assignee of like claims of her sister, Sarah E.

Hawkes, and of the executrix of the will of her aunt, Elizabeth S. Hawkes.

The suits were referred to Henry W. Putnam, Esquire, as master. In his report he made the following general findings of fact, others being stated in the opinion:

At the time of the transactions in question Elizabeth S. Hawkes resided in Marblehead and was over eighty years of age, but was well preserved in body and mind, and remained bright and active until within a few days of her death, which occurred in June, 1905.

Elizabeth S. Hawkes had for many years up to 1895 kept a millinery store in Marblehead, and partly from her savings in that business and partly from inheritance had accumulated a considerable property which was very conservatively invested in real estate, government and municipal bonds, bank stocks, deposits in savings banks, and the like, and which she wholly managed herself. Mary J. Hawkes and Sarah E. Hawkes were her nearest of kin, and were understood to be prospectively, — and became in fact, in the event, — her sole residuary legatees in equal portions. Both were over fifty years of age and had lived with her as the only members of her family and practically as her children, Mary from the age of five days and Sarah from the age of about six years. Both had helped her somewhat in the millinery store, without pay except in board, lodging, and motherly care, and had been wholly dependent on her for support. They had no property except certain savings bank deposits, which afterwards they entrusted to the defendant, and one other deposit, and had derived the money for those deposits wholly from gifts from their aunt.

The defendant was a relative, and was quite intimate with the three women, who had confidence in him. He was about thirty years old at the beginning of these transactions, had graduated from Harvard College in 1895 taking the classical course, and since then had taught arithmetic and grammar and later general commercial law in schools, private classes, commercial colleges and the Young Men's Christian Union and the Young Men's Christian Association, and had accumulated a deposit of a few hundred dollars in a savings bank in Webster. In September, 1905, he entered the Boston University Law School, completed

the three years' course in two years and graduated and was admitted to the bar in 1907. Upon receiving from Elizabeth S. Hawkes on October 5, 1903, the first cash and securities entrusted to him by any of the three, he entered upon an active and extensive career of speculation in the stock market on his own account, almost wholly upon margins, with the money received from the Misses Hawkes and from other persons as well as with his own funds, and continued the same during the entire period covered by this report up to the filing of the bill in the first suit, receiving from the brokers from three to eight and one half per cent interest per annum on his deposits. He kept no books of account or bank deposits either of his own or of other persons' money, and mingled it all in one running account in his own name with the successive brokerage firms with which he carried on his stock speculations. He had no aids for his own memory or for the enlightenment of others in regard to his transactions except occasional and imperfect memoranda in diaries, checks, receipts, brokers' accounts, and the like, and his memory was very uncertain.

The master described in detail thirteen transactions of the kind above mentioned, occurring at dates between October 5, 1903, and July 27, 1907, nine of which were with Elizabeth S. Hawkes, two with Mary J. Hawkes and two with Sarah E. Hawkes.

As to the transaction regarding the check for $1,600, referred to in the opinion, the master found as follows:

" In the summer of 1904 the First National Bank of Lynn in which Elizabeth S. Hawkes was the owner of a number of shares, went into liquidation and was reorganized into the Essex Trust Company under a plan by which the Bank stockholders had the option either to take one share of the trust company in exchange for every two shares of the bank held by them or to be paid cash for the latter at a certain price per share. Miss Hawkes chose the latter alternative and on August 22, 1904, received the trust company's check to her order for $1,600, which she transferred to the defendant by indorsing it to the order of William H. Lackey, the defendant's father, who, as a part of her indorsement and before her signature, indorsed it to the defendant. The following is a copy of all the indorsements on

said check in the order in which they stand, and I find as a fact that they were successively written in the same order.

'Pay to the order of Wm. H. Lackey'
            [Written by Elizabeth S. Hawkes.]
'Pay to the order of William A. Lackey
                        William H. Lackey'
        [Written and signed by William H. Lackey.]
'Pay to the order of Kidder Peabody & Co.
                        Wm. A. Lackey
                        William A. Lackey'
        [Written and signed by William A. Lackey.]
                        'Elizabeth S. Hawkes.'

" I find on all the evidence that the defendant was accountable for the proceeds of said check to Miss Elizabeth S. Hawkes and that he is therefore now accountable for the same to her executrix with six per cent interest."

As to the two ten year notes aggregating $2,050, mentioned in the opinion, the master found substantially as follows :

During the lifetime of Elizabeth S. Hawkes, the plaintiff's aunt, the defendant gave to her a note, dated April, 1904, and reading, " For value received I promise to pay to Elizabeth S. Hawkes two thousand and fifty dollars," that being the amount of a debt then owed to her. " As this note was not negotiable it was, I assume, not *prima facie* payment of the pre-existing obligation or debt he owed her and I find, so far as it is a question of fact, that the latter was not paid or merged by said note, and remained unpaid till the death of Elizabeth S. Hawkes, except as to two partial payments of $41 each on November 1, 1904, and May 1, 1905, which were the exact equivalent of semi-annual instalments of interest at four per cent per annum, on said note ; also that no agreement was made between the defendant and said Elizabeth S. Hawkes abrogating, or modifying in any particular, the character or terms of " the original obligation or debt of $2,050, " or waiving the same, unless her acceptance of said payments constituted as matter of law a waiver of six per cent interest and an election to treat the original obligation as a four per cent loan.

" On January 20, 1906, the defendant gave to Mary J. and

Sarah E. Hawkes each a negotiable ten year four per cent note for $1,025 dating them back to May 1, 1904, which was approximately the date of the original $2,050 note, taking up and destroying the $2,050 note. This was intended by the parties as an informal partial distribution of Elizabeth S. Hawkes's estate between her two sole and equal residuary legatees, — no probate account having been made by the executrix.

"On November 1, 1905, defendant paid and the plaintiffs received $41, and on May 1, 1906, and on each succeeding May 1 and November 1 up to and including November 1, 1908, they received $20.50 each, being the amount of the semiannual interest at four per cent per annum. I find, so far as it is a question of fact, that no agreement was made between the defendant and the executrix of Elizabeth S. Hawkes's estate or between him and Mary J. or Sarah E. Hawkes, abrogating or modifying in any particular the character or terms of the original obligation and debt to Elizabeth S. Hawkes or waiving the same, unless the transaction of January 20, 1906, and the acceptance of said payments constituted as matter of law a waiver of six per cent interest or an election to treat the original obligation as a four per cent loan.

"I also find as a fact that these two $1,025 notes were not a gift by defendant of that sum to either the payees or the estate of Elizabeth S. Hawkes outside of, and over and above, any sum which he might owe them, nor anything but a memorandum of, and in recognition or acknowledgment of, the principal sum of said original obligation or debt of $2,050 to Elizabeth S. Hawkes, and that, upon plaintiff's obtaining a decree for the latter, the defendant is entitled to have said notes delivered up to him or filed with the papers in the case.

"As these two $1,025 notes do not run to the executrix, I assume the law to be that, although a negotiable promissory note is *prima facie* payment of a pre-existing debt for the same amount due from the maker to the payee, it is not so of a debt due from the maker to another person, — that in such a case there is no merger; and that therefore these notes did not constitute payment or merger of said original obligation or debt, — which I conclude on my findings of fact, to have been then still due to the estate of Elizabeth S. Hawkes, — even assuming in

the defendant's favor that the executrix could legally give an eight year extension at four per cent of a six per cent debt already due her testator's estate. I accordingly conclude that said original obligation or debt is still due according to its original terms as above found by me, to the estate of Elizabeth S. Hawkes after crediting thereon certain partial payments."

Objections and exceptions to the report were filed by the defendant only. Such of them as are material to the decision are stated in substance in the opinion. The suits were heard upon the defendant's exceptions and the matter of final decrees by *Pierce*, J., who made final decrees, that in the first case establishing the debt of the defendant and costs at $6,376.96, and the debt in the second case at $14,460.79, and appointing a special master to sell the interest of the defendant in the trust under the will of Mary A. Alley, in case he refused to satisfy the decrees in full. The defendant Lackey appealed.

*F. Paul*, for the defendant Lackey.

*B. B. Jones*, (*G. Calkins* with him,) for the plaintiff.

SHELDON, J. The first contention made by the defendant Lackey, hereinafter called the defendant, is that these bills ought to be dismissed by reason of laches on the part of the plaintiff. That defense was not set up in the pleadings, and is not now open to the defendant as of right. *Stewart* v. *Joyce*, 201 Mass. 301. Nor, considering the character of the actions, and the facts found by the master, ought such a defense to be sustained. As to most of the transactions complained of, the delay in bringing suit has been largely due to the misplaced confidence reposed in the defendant by the plaintiff and her aunt and sister, in whose right the second suit is brought. The defendant has not changed his position or lost anything from the fact that the suits were not brought earlier. *Stewart* v. *Finkelstone*, 206 Mass. 28, 36. As to some of the complaints made against him, he rests his defense on the ground that the bills were prematurely brought.

The judge of the Superior Court sustained the defendant's exceptions numbered thirteen to twenty inclusive, so far as they related to the master's assumption of law that there was no merger of the defendant's obligation of $2,050 to Elizabeth S. Hawkes by the two ten year notes, each for half that sum which

the defendant gave respectively to the plaintiff and her sister Sarah.    The plaintiff did not appeal, and the correctness of this ruling is not before us.    But the judge also found as a conclusion of fact and law from the whole of the master's report that the plaintiff and her sister were induced to receive the payments of interest upon these notes by undue influence of the defendant, and that the notes should be reformed into demand notes carrying interest at four per cent to the date of the filing of the bill and thereafter at six per cent.    The right of the judge to make further or different findings by inferences drawn from the facts reported by the master is settled.    *Rosenberg* v. *Schraer*, 200 Mass. 218.    *American Circular Loom Co.* v. *Wilson*, 198 Mass. 182, 200, and cases cited.    And see *Knowles* v. *Knowles*, 205 Mass. 290, 294.    But the defendant contends that this finding, that the conduct of the plaintiff and her sister was induced by the undue influence of the defendant, was unsupported by the facts found and reported by the master and was unwarranted. This contention makes it necessary to examine the master's report.

He has found that at the time of the transactions in question the plaintiff and her sister were each more than fifty years of age, with no property except what had come to them from their aunt, Elizabeth S. Hawkes.    They were intelligent and well educated and knew the character and meaning of interest on money and of the time at which a note was payable.    But they had scarcely any business experience, and at the beginning of the time in question were almost like children in money matters; and these facts were known to the defendant.    They trusted him implicitly, and apparently always did what he asked or advised, although the legal matters connected with their aunt's estate were, as the defendant knew, in the hands of an attorney, who had not been consulted about these notes and was not present when they were given.    The defendant was a relative of these ladies, was intimate with them, and they had confidence in him.    He was about thirty years of age and a college graduate.    He had had little business experience except through his speculations in stocks, which seem to have been extensive and long continued, and apparently were finally disastrous.    For about two years he had acted for these sisters, and for their

aunt in her lifetime, making some investments for them with a part of the money which he procured from them. That fiduciary relation and their confidence in him continued until some months before the first of the suits was brought. He asked for the ten year extension of the notes for his own advantage and not in the interest of their aunt's estate, which had become practically theirs. He did not make any false or fraudulent representation of fact to them in connection with this matter. They acted, and it is a fair and really a necessary inference from the findings of the master that he knew that they acted and intended that they should act, from a feeling of blind and unquestioning trust in him, and also of accommodation towards him, apparently without considering or appreciating the possible effect of their accepting the notes; partly also from a desire, which began in them soon after their aunt's death, to help his speculations and themselves to participate in these, as they afterwards did in one of them. But they acted in taking these notes and in receiving payments of interest thereon without any coercion or inducement on his part, unless his letting them do so without any special warning or discussion or any suggestion that they should consult their attorney, and knowing their trust and confidence in him, constitute in law such inducement or coercion. In other words, owing to them the duties which grew out of the fiduciary relations that existed between them and him, he acted, and availed himself of their trust and confidence in him to lead them to act, for his own benefit and advantage and to their hazard and detriment with reference to the fiduciary obligations which he owed to them.

The law in relation to such transactions is well settled. It was succinctly stated by Lord Chelmsford in *Tate* v. *Williamson*, L. R. 2 Ch. 55, 61 : " Wherever two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, although the transaction could not have been impeached if no such confidential relation had existed." The principle has been affirmed by this court

in many cases where, under diverse circumstances and by reason of different relations, a special duty was owed by one party to another, either by reason of confidence having been reposed in the former or because of a duty having been created by law. It was applied to dealings between attorney and client in *Hill* v. *Hall*, 191 Mass. 253; to trustees in *Hayes* v. *Hall*, 188 Mass. 510; to executors in *Bowen* v. *Richardson*, 133 Mass. 393; to brokers, as to matters within the scope of their agency, in *Quinn* v. *Burton*, 195 Mass. 277, 279; to directors of a corporation in *Parker* v. *Nickerson*, 112 Mass. 195; to promoters in *Hayward* v. *Leeson*, 176 Mass. 310, and *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow*, 188 Mass. 315, and 203 Mass. 159. Although the court were divided in opinion in the final decision of the case last cited, there was no disagreement as to the general principle stated. See further *Woodbury* v. *Woodbury*, 141 Mass. 329, *Lane* v. *Moore*, 151 Mass. 87, and *In re Garnett*, 31 Ch. D. 1. This is a question of the violation of the duties owed by one who stands in a relation of trust and confidence, not the exertion of undue influence by one who owed no special duty and who sought to gain his end either by actual deception or by means of a domination over the mind of the person practised upon, as in *Howe* v. *Howe*, 99 Mass. 88, and similar cases.

We are clearly of opinion that the conclusion of the judge as to this matter was well warranted by the master's report.

The fact that the plaintiff and her sister had received some payments of interest upon these notes was not under the circumstances conclusive evidence of an election on their part to confirm the taking of the notes. Pressed to its strongest, this could not amount to more than an admission by them. Like all bare admissions, it was merely evidence to be considered, as it has been considered, by the master.

The fact that Elizabeth S. Hawkes passed the title to the check for $1,600 to the defendant through his father, and that the attempt was made to indorse it first to the father, then to be indorsed by the father to the defendant, does not make it necessary to find that this was a loan by her to the father and not to the defendant. This too was a piece of evidence, upon which the master was to pass. He has done

so, with other evidence which is not before us. We cannot revise his finding.

Upon examination of the master's report, the defendant's exceptions thereto, and the interlocutory and final decrees entered thereon, we find no error in the allowances of interest that finally were made, and only one matter that calls for any discussion. The master reported the sums found due from the defendant in each transaction, and reckoned interest thereon in various ways to meet the different rules of law that might be found to be applicable. The judge sustained the defendant's contention that he should be charged only with simple interest, and as to some matters with interest to be computed at the rate of only four per cent up to the dates of filing the respective bills. But the defendant contends that in the final decrees interest was charged upon the aggregate sums found by the master from the date of the filing of the master's report, and that the result of this was to charge him with interest at least once compounded, because the amounts reported were made up in part of interest reckoned up to the date of the report. It might be doubted whether upon this record such a position is open to the defendant. *Young* v. *Winkley*, 191 Mass. 570. We assume however that he may contend that the final decree was erroneous in any particular disclosed by the record. *Nelson* v. *Winchell & Co.* 203 Mass. 75, 93.

It was early decided that where the plaintiff in an action upon a contract was delayed in obtaining judgment by an unsuccessful effort of the defendant to obtain a new trial, his judgment should include interest upon the amount of the verdict from the time that it was rendered. *Vail* v. *Nickerson*, 6 Mass. 262. This rule has since been extended by statute and applied to all awards of county commissioners, committees or referees, and reports of auditors or masters in chancery, as well as to all verdicts of juries. R. L. c. 177, § 8. That is decisive of the present contentions. It was the plaintiff's right to have interest computed as the defendant contends was done. See *East Tennessee Land Co.* v. *Leeson*, 185 Mass. 4; *Jackson* v. *Brockton*, 182 Mass. 26.

All the points that were argued before us are covered by what has been said. In each case the decrees appealed from, unless

the Superior Court should see fit to revise the computations of interest upon which the final decrees were based, must be modified by charging the defendant with additional interest for the time that has since passed and with the costs of this appeal; and so modified must be affirmed.

*So ordered.*