**HENKIN, INC., et al., Appellants,**

v.

**BEREA BANK & TRUST CO. et al., Appellees.**

**HENKIN, INC., et al., Appellants,**

v.

**Ralph DEAN, Appellee.**

Court of Appeals of Kentucky.

Feb. 10, 1978.

As Modified On Denial of Rehearing June 2, 1978.

R. J. Turley, Jr., Turley, Savage & Moore, Lexington, for appellants.

Robert P. Hastings, Hardy, Logan & Hastings, Louisville, for appellee, Ralph Dean.

John E. Smith, Lancaster, A. B. Rouse, Jr., Rouse & Collins, Lexington, for appellee, Berea Bank & Trust Co., et al.

Before HAYES, REYNOLDS and VANCE, JJ.

VANCE, Judge:

These appeals arise from judgments entered in two separate actions but they involve the same factual situation and we have elected to dispose of both appeals with this opinion.

Henkin, Inc. is the owner and operator of a radio broadcasting station which it purchased from Tinker, Inc. giving, as a part of the purchase price, its promissory note for $160,000 payable in installments. The note was secured by a mortgage upon five acres of land on which the station was built.

Tinker, Inc. offered to accept a 22.36% discount of the note if Henkin would pay it in full and Henkin applied to the Berea Bank and Trust Company for a $100,000.00 loan with which it proposed to pay off the Tinker obligation. The loan to the bank was to be secured by a mortgage on the station property. In connection with the loan application, Henkin revealed to the officers of the bank the opportunity it had to obtain a substantial discount from the face value of the note. Henkin was a customer of the bank.

The bank turned down Henkin's application for the loan on February 7, 1970. Thereafter Henkin sought financing from other sources but was informed by Ralph Dean, the owner of more than 50% of the bank's stock, but not an officer or director, that the bank would "work something out" on the proposed loan. It is disputed as to whether Henkin actually made another application for a loan. It is not disputed, however, that Ralph Dean engaged in conversation with Tinker with a view toward purchasing the Henkin note from Tinker for the bank at a discount without revealing that Henkin was attempting to negotiate a loan with the bank to accomplish the same purpose.

In July, 1970 the bank's directors authorized the bank to purchase the Henkin note from Tinker. On the same day the bank disapproved a loan request of $100,000.00 by Fred Hensley, who was the president of Henkin, Inc. The bank purchased the Henkin note, the balance of which was $118,-000.00 for $95,000.00 and took an assignment of the mortgage securing the note. When Henkin was a few days late with its first installment payment to the bank, the bank accelerated all future payments and instituted foreclosure proceedings against Henkin.

While the foreclosure proceedings were pending, the bank was closed by the Commissioner of Banking. Some of its assets were transferred to another bank and the remainder, including the Henkin note, was transferred to the Federal Deposit Insurance Corporation. F.D.I.C. filed an intervening complaint in which it sought judgment for the full amount of the note and a sale of Henkin's property to satisfy the note.

Henkin filed a counterclaim against the bank in which he alleged that the bank, by and through Ralph Dean acting as agent for the bank, induced Tinker to breach its contract with Henkin; that the bank, acting by and through Ralph Dean, wrongfully interfered with a prospective advantage of Henkin; that the bank and Ralph Dean perpetrated a fraud upon Henkin and breached a confidential or fiduciary relationship with Henkin. It sought actual damages of $35,000.00 from the bank and punitive damages of $500,000.00.

Henkin additionally asserted the same counterclaim as a set-off on any amount due F.D.I.C. Henkin obtained an agreed order by which it was permitted to pay F.D.I.C. the balance of the note without waiver or prejudice to the counterclaim. Henkin offered an amended counterclaim which pleaded unjust enrichment.

In a separate action Henkin instituted proceedings against Ralph Dean, individually, upon the same claims which it asserted against the bank by counterclaim.

■ The trial court sustained motions to dismiss both the claim against Ralph Dean and the counterclaim against F.D.I.C. These appeals question the propriety of the orders of dismissal. A motion to dismiss tests the pleadings and the allegations of the pleader must be taken as true for this purpose.

The trial court was of the opinion that, unfair and improper as it may seem, there is no requirement that a bank is legally bound by morals, ethics or strictures of conscience except as may be imposed by legislation and that there is no "confidential relationship" between a banker and its customers.

■ The question appears to be one of first impression in Kentucky. The fact that no case has been found in which relief has been granted under similar circumstances is not a controlling reason for refusing it; otherwise, the court would often find itself powerless to grant adequate relief, solely because the precise question had never arisen. 27 *Am.Jur.2d*, Equity, Section 121.

The question of whether a bank stands in a fiduciary capacity with respect to confidential relations with its customers has arisen in other states. In *Warsofsky v. Sherman*, 326 Mass. 290, 93 N.E.2d 612 (1950) a member of the bank's loan committee learned of an offer to sell real property from an applicant for a loan who intended to use the loan proceeds to purchase the property. The member of the loan committee took advantage of the information and purchased the property for himself. In a well reasoned opinion the Massachusetts court stated:

■ Doubtless, there are many familiar and well recognized forms of fiduciary relationships such as attorney and client, trustee and beneficiary, physician and patient, business partners, promoters or directors and a corporation, and employer and employee. See *Hawkes v. Lackey*, 207 Mass. 424, 433, 93 N.E. 828; *Yamins v. Zeitz*, 322 Mass. 268, 272, 76 N.E.2d 769. The relationship is not confined, however, to these and similar situations, for the circumstances which may create a fiduciary relationship are so varied that it would be unwise to attempt the formulation of any comprehensive definition that could be uniformly applied in every case. See Scott on Trusts, § 462; Pomeroy, Eq.Jur., 5th Ed., § 956a. There is jurisdiction in equity to prevent, by means of the remedial device of a constructive trust, unjust enrichment arising out of a breach of a fiduciary relation[ship]. The existence of the relationship in any particular case is to be determined by the facts established. It was said by Lord Chelmsford in *Tate v. Williamson* L.R. 2 Ch. 55, 61, "Wherever two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, although the transaction could not have been impeached if no such confidential relation had existed." That statement has been frequently cited with approval by this court.

.     .     .     .     .

The information given by the plaintiff to the defendant was furnished in confidence by the plaintiff in order to enable the defendant and other members of the committee to whom he might convey the information to determine whether the loan should be granted. It was to be used for no other purpose, and the defendant, impliedly at least, understood the terms upon which the information was given and voluntarily undertook to comply with those terms. He stood in a fiduciary relation toward the plaintiff with reference to the matters disclosed.

.     .     .     .     .

If the information furnished by the applicant for a loan is to be seized upon immediately by the bank official to whom it is given and if by virtue of the information he can purchase the property behind the

back of the applicant, then public confidence in such institutions will be seriously impaired if not utterly destroyed. In any event, an applicant for a loan ought not to be subjected to such risks. A bank official to whom an application for a loan is made must act fairly and impartially toward the bank and toward the applicant. He is prohibited from deriving any personal gain at the expense[s] of the applicant. *Id.,* 93 N.E.2d at 615–616.

In *Security Trust Co. v. Wilson,* 307 Ky. 152, 210 S.W.2d 336 (1948) the court quoted with approval the following definition of a fiduciary relationship:

The relation[ship] may exist under a variety of circumstances; it exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence. 307 Ky. at 157, 210 S.W.2d at 338.

A confidential relationship was held to create a fiduciary relationship in *Lappas v. Barker,* Ky., 375 S.W.2d 248 (1963).

We conclude that the pleadings sufficiently alleged the existence of a fiduciary relationship and the breach thereof which, if proven, would warrant relief against the Berea Bank.

F.D.I.C. contends that it is a holder in due course, it having purchased the Henkin note from the Commissioner of Banking for value. As a holder in due course, it contends that the claim of Henkin, however valid it may be against the bank, cannot be set off as a defense to the collection of the note by F.D.I.C.

We do not agree that F.D.I.C. is a holder in due course. It became obligated as a guarantor of the deposits in the Berea Bank. The Commissioner of Banking sold some of the assets of the Berea Bank to another bank and transferred the remainder of the assets in bulk to F.D.I.C. Such a transaction does not possess the characteristics of a sale for value, in good faith and without notice of defense. In our view, F.D.I.C. became subrogated to the rights of

the bank by reason of the fact that it was required to discharge the obligation of the bank. It stood in the shoes of the bank and Henkin should be able to assert any defense against the collection of the note by F.D.I.C. that it could have asserted against the bank.

Section 3–302(3)(c) of the Uniform Commercial Code provides that a holder does not become a holder in due course of an instrument by purchasing it as a part of a bulk transaction not in the regular course of business of the transferor. Official comment 3 states that Section (3)(c) has particular application to the purchase by one bank of a substantial part of the paper held by another bank which is threatened with insolvency and seeking to liquidate its assets.

A receiver of an insolvent bank is a trustee for the creditors, and proceedings instituted by him are subject to the same defenses that might have been interposed against the bank. *Federal Deposit Insurance Corp. v. Pendleton,* D.C., 29 F.Supp. 779 (1939). F.D.I.C. was not a receiver in this instance but no good reason exists why it should occupy a position superior to the bank.

F.D.I.C. contends that the claim of Henkin should have been asserted separately pursuant to KRS 287.600 and not by way of set-off. In our view the claim of Henkin arose out of the transaction in which the bank obtained the note. The pleading asserts that the bank held the note in a constructive trust for Henkin.

We conclude that the counterclaim against F.D.I.C. should not have been dismissed except as to Count five of the counterclaim which sought punitive damages for the tort.

It was alleged in both the counterclaim and in the separate action against Ralph Dean that Dean acted for and in behalf of the bank in the breach of a confidential relationship and for the purpose of inducing Tinker to breach its contract with Henkin or at least to interfere with a prospective advantage of Henkin.

Although it is doubtful that an actual contract existed between Henkin and Tinker for the sale of the note at a discount, such a contract was pleaded. In any case the purchase of the note by the bank interfered with a prospective advantage of Henkin.

Dean contends that Kentucky law does not impose tort liability upon a stranger for inducing another to breach a contract. The law upon this point is not altogether clear.

In *Davis H. Elliot Co. v. Carribean Utilities Co., Ltd.,* 513 F.2d 1176 (6th Cir. 1975), it was stated that intentional interferences with a known contractual relationship give rise to a tort action in Kentucky, citing *Derby Road Building Co. v. Commonwealth of Kentucky,* Ky., 317 S.W.2d 891 (1958). In *Derby* an action against utility companies for failure to clear a right of way was dismissed because the court found they had no obligation to clear the right of way. In passing, the court stated that liability of the utility could only be predicated upon a showing that the utility company had maliciously interferred with known contractual rights. *Brooks v. Patterson,* 234 Ky. 737, 29 S.W.2d 26 (1930), was cited as authority.

*Brooks* contains a full discussion of tort liability for interference by an inter-meddler with a contractual relationship but holds that no action lies in Kentucky for such a breach unless the inter-meddler employs unlawful means, such as fraud, deceit or coercion, and special damage is sustained as a result.

*Brooks* involved interference which allegedly caused the withdrawal of an offer rather than the inducement of a breach of contract. In that respect it was similar to this case and it stated that interference which prevents the making of future contracts is the equivalent of interference which induces the breach of an existing contract. This view is also espoused by Prosser. Prosser, *Law of Torts,* 4th Ed. Section 130, page 951.

We conclude that tort liability exists in Kentucky for the malicious interference with known contractual rights of another when special damage results therefrom, at least when accomplished by some unlawful means such as fraud, deceit or coercion.[1] We would place the breach of a fiduciary or confidential relationship on a par with fraud and deceit. The pleadings sufficiently charge the tort of malicious interference with known contractual rights of another through the use of unlawful means.

It is admitted that Ralph Dean did not personally profit from the transaction in which the bank took advantage of Henkin's bargain. He was the principal stockholder of the bank, however, and it is alleged that he acted as an agent of the bank in making the transaction. It is well established that an agent for a corporation is personally liable for a tort committed by him although he was acting for the corporation. *Peters v. Frey,* Ky., 429 S.W.2d 847 (1968); *Small v. Bailey,* Ky., 356 S.W.2d 756 (1962). It therefore appears that the pleadings sufficiently stated a claim against Ralph Dean individually.

We reverse the judgments in each of the captioned appeals for further proceedings consistent with this opinion.

In CA–1311–MR the tendered amended answer and counterclaim should be filed and in both cases the issues made by the pleadings should proceed to trial on the merits.

All concur.

---

1. *Cf. Carmichael-Lynch-Nolan Advertising Agency, Inc. v. Bennett & Associates, Inc.,* Ky. App., 561 S.W.2d 99, (1977).