SNOW PALLET, INC., and Gleta And Jackie Stalcup, Appellants,

v.

MONTICELLO BANKING COMPANY and Monticello Bankshares, Inc., Appellees.

No. 2011–CA–000696–MR.

Court of Appeals of Kentucky.

April 20, 2012.

William R. Kenealy, Louisville, KY, for Appellants.

Keith Moorman, Lexington, KY, Van F. Phillips, Monticello, KY, for Appellees.

Before CAPERTON and THOMPSON, Judges; LAMBERT,[1] Senior Judge.

## OPINION

LAMBERT, Senior Judge:

Snow Pallet, Inc., Gleta Stalcup, and Jackie Stalcup appeal from a summary judgment of the Clinton Circuit Court dismissing their claims of breach of fiduciary duty, interference with contractual relations, and interference with prospective business advantage against Monticello Bankshares, Inc., and Monticello Banking Company. Upon a thorough review of the record, we affirm the Clinton Circuit Court.

### History

Snow Pallet was a corporation engaged in the business of making wood pallets. In 1995, Snow Pallet approached Monticello Bankshares, Inc., and Monticello Banking Company about borrowing funds for the financing of their pallet manufacturing operation in Albany, Kentucky. In joint agreement with another local lender, Monticello agreed to loan Snow Pallet $60,000. A forty-eight (48) acre and a six (6) acre tract of land were used as collateral for the loan, as well as building materials.

In January of 1998, Snow Pallet sought financing to purchase new equipment and expand its business enterprise. To do so, it sought a $355,000 loan from the Clinton County Industrial Development Authority. The Industrial Authority is a non-profit agency that oversees the distribution of federal funds to promote the expansion of small local businesses.[2]

In March of 1998, the Industrial Authority approved Snow Pallet's loan for $355,000, with an interest rate fixed at two percent (2%) below the prime rate. Both Snow Pallet and Monticello believed that Snow Pallet would receive this loan

---

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

2. In a separate action, Snow Pallet sued the Industrial Authority on the grounds that it approved the loan and then wrongfully withheld funds. Although Snow Pallet makes numerous arguments related to this loan, the only issue properly before us is whether Ruben Leveridge breached a fiduciary duty or tortiously interfered with a contractual or business relation between Snow Pallet and the Industrial Authority while acting as an agent for Monticello. All other issues are irrelevant to the present appeal.

through the Industrial Authority. In anticipation of the loan closing, Snow Pallet began undertaking activities to expand the business, including the purchase of new equipment. During the time of this expansion, the Industrial Authority board members travelled to Snow Pallet's facilities and had their picture taken for the paper.

The loan sought from the Industrial Authority was not made. A reduced loan amount of $75,000 was approved, but Snow Pallet declined to accept. In 1999, when Snow Pallet failed to receive funding through the Industrial Authority, it requested additional financing from Monticello. Monticello agreed to extend Snow Pallet a loan for $255,000.

The principal owners of Snow Pallet, Jackie and Gleta Stalcup, testified by deposition that the business struggled without the Industrial Authority's loan. In addition, Gleta suffered numerous health problems between the years of 2000 and 2003, which reduced the amount of time she could spend working for the business. Because of these factors, Snow Pallet began having difficulty making payments on the loan.

Ruben Leveridge became president of Monticello in 2002. He was appointed to the Industrial Authority Board in 2003. During this time, Snow Pallet fell behind in its bank loan payments. By April of 2003, Snow Pallet stopped making payments on the loan altogether. At this time, Snow Pallet also owed approximately $50,000 in back taxes. Snow Pallet sought an additional $25,000 loan from Monticello to help keep the business afloat. Monticello declined to extend further financing and declined to allow Snow Pallet to sell of some of the secured property to pay off debts. However, Monticello proposed a "work out" agreement to help bring Snow Pallet current in its payments. Snow Pallet declined to sign a "work out" agreement with Monticello.

In September or October of 2003, when Snow Pallet continued in its failure to make loan payments, Monticello filed a foreclosure action. The property secured by the note was eventually sold to satisfy Snow Pallet's loan debt. The sale produced almost enough in proceeds to repay Snow Pallet's indebtedness to Monticello. Monticello chose not to pursue the shortfall. Snow Pallet filed for bankruptcy.

Prior to the foreclosure sale, Snow Pallet again approached the Industrial Authority and requested that the loan it applied for in 1998 be extended. The Industrial Authority reconsidered the 1998 loan application, but declined to extend the loan. The Industrial Authority noted that its decision was based upon the advice of counsel, as there was already pending litigation between Snow Pallet and the Industrial Authority concerning the 1998 loan.

In October of 2007, Snow Pallet filed the action hereinbelow, alleging breach of fiduciary duty and tortious interference with contract and business relations. Snow Pallet alleged that Ruben Leveridge, acting as both president of Monticello and as a member of the board for the Industrial Authority, had a conflict of interest. Moreover, Snow Pallet alleged that Leveridge advocated for the allocation of Industrial Authority funds to Vanderbilt Yachts while still the president of Monticello. Snow Pallet alleged that this occurred in the same period that Snow Pallet was attempting to secure Industrial Authority funds for its business.

The complaint alleged that Leveridge left Monticello in 2004 to work for Vanderbilt Yachts, although Leveridge remained on the Industrial Authority board. An alleged loan was extended to Vanderbilt Yachts in 2004 by the Industrial Authority,

$355,000 of which was alleged to have been originally intended for Snow Pallet. Snow Pallet's theory of the case is that Monticello is liable for the actions of its agent, Leveridge, who purportedly convinced the Industrial Authority to loan the money "set aside" for Snow Pallet to Vanderbilt Yachts. Thus, Snow Pallet argues breach of fiduciary duty and tortious interference with contractual and business relations.

The trial court entered summary judgment in favor of Monticello. Snow Pallet now appeals.

## Analysis

Upon review of the summary judgment, we ask whether the trial court properly determined that there were no genuine issues as to any material fact and that Monticello was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996). While doing so, we view the evidence of record in a light most favorable to Snow Pallet. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky.1991). We owe no deference to the trial court in making this determination. *Blevins v. Moran*, 12 S.W.3d 698, 700 (Ky.App.2000).

■ Snow Pallet argues on appeal that Monticello breached a fiduciary duty to Snow Pallet and tortiously interfered with its prospective contractual and business relationship with the Industrial Authority. We first address whether any genuine issue of material fact exists with respect to Snow Pallet's claim for breach of fiduciary duty.

■ A fiduciary duty is defined as "a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Steelvest*, 807 S.W.2d at 485, quoting *Security Trust Co. v. Wilson*, 307 Ky. 152, 210 S.W.2d 336 (Ky.1948). As a general rule, banks do not owe a fiduciary duty to their customers. *de Jong v. Leitchfield Deposit Bank*, 254 S.W.3d 817, 822 (Ky.App.2007). Nonetheless, a bank may fall "under a fiduciary duty to disclose material facts affecting the loan transaction[ ]" when extending a loan to a customer. *Steelvest*, 807 S.W.2d at 485.

In 2002, the U.S. Court of Appeals for the Sixth Circuit noted that there were only two published cases in Kentucky where courts found a fiduciary relationship between a bank and a borrower: *Steelvest, Inc. v. Scansteel* and *Henkin, Inc. v. Berea Bank and Trust Co. In re Sallee v. Fort Knox Nat'l Bank, N.A.*, 286 F.3d 878, 893 (6th Cir.2002), citing *Steelvest, supra; Henkin, Inc. v. Berea Bank and Trust Co.*, 566 S.W.2d 420 (Ky.App.1978). In both instances, the bank profited from confidential information received through the borrower. *Id.*

The bank in *Steelvest* was found to be in a confidential relationship with the plaintiff because it had confidential information about his business plans. *Steelvest* at 486. The Kentucky Supreme Court found there was a genuine issue of material fact as to whether the bank breached a fiduciary duty by agreeing to lend money to a current officer of the plaintiff company to open a competing business, despite knowing this would directly harm the plaintiff. There was also a question as to whether the bank relied upon confidential information about the plaintiff's business when agreeing to extend the loan. *Id.*

In *Henkin*, the plaintiff sought financing from a bank to purchase a radio station. The plaintiff revealed to the bank that the note holder was going to offer him a substantial discount to pay the note off in full. 566 S.W.2d. at 422. The bank declined to loan the plaintiff the money and then used the information it garnered from him to

purchase the note itself and reap the benefit of the discount. *Id.*

In the present case, Snow Pallet has not alleged that Monticello profited from any confidence it gained through Snow Pallet. It may or may not have been a conflict of interest for Leveridge to act as both president of Monticello and a member of the board for the Industrial Authority concurrently, but this factor alone does not create a fiduciary relationship in favor of Snow Pallet.[3]

Even assuming Snow Pallet's allegations to be true and viewing the circumstances in a light most favorable to it, the availability of low-interest loans to local businesses through the Industrial Authority was not confidential or secret information. Even though Leveridge probably knew of Snow Pallet's attempt to gain financing through the Industrial Authority, Snow Pallet applied for a loan in 1998 and Vanderbilt Yachts was extended a loan in 2004.[4] There is no evidence of record, other than mere speculation, that the loan Snow Pallet applied for in 1998 was turned down at Leveridge's insistence or that the money loaned to Vanderbilt five to six years later was from the same "pot" or "pool" of money that the 1998 loan was slated to be drawn from.[5] Kentucky courts have made clear that "speculation and supposition are insufficient to justify a submission of a case to the jury[.]" *O'Bryan v. Cave,* 202 S.W.3d 585, 588 (Ky.2006) quoting *Chesapeake & Ohio Ry. Co. v. Yates,* 239 S.W.2d 953, 955 (Ky.1951). Finally, even if the speculations were true, it would have been Leveridge's actions when acting as an agent for the Industrial Authority, *not for Monticello,* which would give rise to liability.

██ A fiduciary duty is "the highest order of duty imposed by law." *Sallee,* 286 F.3d at 891. It is not to be lightly required. In an arms-length commercial transaction, where each party is assumed to be protecting its own interest, no such duty arises. *Id.* at 894. For the foregoing reasons, we affirm the Clinton Circuit Court's summary judgment in favor of Monticello on the question of fiduciary duty.

██ We next consider Snow Pallet's claims for tortious interference with contract and tortious interference with business relations. These theories are, again, predicated upon actions taken by Leveridge, while ostensibly acting as agent for Monticello.

To show that Leveridge tortiously interfered with the extension of a loan to Snow Pallet from the Industrial Authority, Snow Pallet must show: (1) the existence of a contract; (2) Leveridge's knowledge of the contract; (3) that Leveridge intended to cause a breach of that contract; (4) that

3. We make no findings with respect to whether Leveridge himself may have been liable in tort to Snow Pallet. He is not a party to the present action. Rather, we only address the question presented for our review, whether Monticello is vicariously liable in tort to Snow Pallet for Leveridge's acts or omissions.

4. Further, there is no evidence, other than speculation, that Leveridge had any control over decision-making at the Industrial Authority in 2004. Instead, the record shows that he was one member of a seven (7) person board.

5. Moreover, Snow Pallet was admittedly having financial troubles and was unable to meet its monthly loan obligations to Monticello when it reapplied for credit in 2003. Further, Snow Pallet had already instituted legal proceedings against the Industrial Authority. Thus, it appears there were numerous reasons (other than Leveridge's alleged actions) for the Industrial Authority to deny the loan on the second occasion. In addition, Snow Pallet was specifically told that the loan was denied in 2003 on the advice of counsel.

Leveridge's actions did indeed cause a breach; (5) that damages resulted to Snow Pallet; and (6) that Leveridge had no privilege or justification to excuse its conduct. *Ventas, Inc. v. Health Care Property Investors, Inc.,* 635 F.Supp.2d 612, 619 (W.D.Ky.2009). However, Snow Pallet does not allege that a formal contract existed. Instead, Snow Pallet argues that there was an informal agreement the loan would be extended. As the elements for tortious interference with contract are not met, we affirm the trial court's summary judgment on this ground and turn to the next allegation: tortious interference with business advantage.

 Tortious interference with a prospective business advantage does not require the existence of a contract. Rather, Snow Pallet must prove: (1) the existence of a valid business relationship or expectancy; (2) that Monticello was aware of this relationship or expectancy; (3) that Monticello intentionally interfered; (4) that the motive behind the interference was improper; (5) causation; and (6) special damages. *Monumental Life Ins. Co. v. Nationwide Retirement Solutions, Inc.,* 242 F.Supp.2d 438, 450 (W.D.Ky.2003). This analysis turns primarily on motive. *National Collegiate Athletic Ass'n By and Through Bellarmine College v. Hornung,* 754 S.W.2d 855, 859 (Ky.1988). To prevail under this theory of liability, the "party seeking recovery must show malice or some significantly wrongful conduct." *Id.*

We do not find that Snow Pallet has raised a genuine issue of material fact with respect to these elements. Even if we were to assume that applying for a commercial loan creates a valid business expectancy, there is no evidence, other than mere speculation, that Leveridge interfered with such expectancy, or that such interference was improper. Further, there is also no evidence of record, other than mere speculation, that any alleged interference would have been taken while Leveridge was acting as an agent for Monticello. As previously stated, mere supposition and speculation are insufficient for a case to survive the summary judgment stage. *O'Bryan v. Cave,* 202 S.W.3d at 588.

Accordingly, we find Snow Pallet has failed to raise a genuine issue of material fact with respect to its claims of fiduciary duty, tortious interference with contract, and tortious interference with business relations. For the foregoing reasons, we hereby affirm the summary judgment of the Clinton Circuit Court.

ALL CONCUR.