**NOT RECOMMENDED FOR PUBLICATION**
File Name: 15a0059n.06

**No. 14-5761**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| KENNETH WATTS, | ) | **FILED** |
| | ) | Jan 20, 2015 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| LYON COUNTY AMBULANCE SERVICE; ROD | ) | UNITED STATES DISTRICT |
| MURPHY; ANTHONY YOUNG; STEVE | ) | COURT FOR THE WESTERN |
| GILLAND; LILBURN ANN DENNY; JOHN SIMS, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

BEFORE: SUHRHEINRICH and GRIFFIN, Circuit Judges; and LEITMAN, District Judge.[*]

GRIFFIN, Circuit Judge.

Kenneth Watts, the former executive director of Lyon County Ambulance Service (the "ambulance service"), appeals the entry of summary judgment on his Title VII and state-law tortious interference claims against the ambulance service and several members of its board of directors. We affirm.

I.

Watts was terminated from his position as director of the ambulance service in 2011. At the time, Rod Murphy was serving as the chairman of the ambulance service's board of directors. According to Sarah Maki, who was one of Watts's former employees, Murphy called her shortly

---

[*]The Honorable Matthew F. Leitman, United States District Judge for the Eastern District of Michigan, sitting by designation.

before Watts's termination and attempted to convince her to falsely accuse Watts of sexual harassment. Murphy allegedly told Maki that Watts was jeopardizing the contract between the ambulance service and the company that did its billing, and Murphy wanted to fire Watts in order to protect the job of one of his acquaintances who worked for the billing service. Maki declined to join Murphy's scheme.

Maki also claimed that she was contacted at about the same time by a former ambulance service coworker, Sara Mink-Taylor, who told Maki that she "want[ed]" to file a sexual harassment claim against Watts with the board of directors in order to get Watts fired and asked Maki to do likewise. Maki again refused. There is no indication in the record that either Mink-Taylor or Maki ever notified the board about any alleged sexual harassment involving Watts.

Ultimately, the board fired Watts, citing significant performance deficiencies in his management of the ambulance service. Watts was replaced as executive director by another male.

Watts then filed a complaint in the district court against the ambulance service and its directors, alleging in pertinent part that his termination violated Title VII's prohibition against sex-based discrimination and that Murphy had tortiously interfered with his employment contract with the ambulance service. Watts testified at his deposition that he believed that Murphy tried to incite false sexual harassment allegations against him as a way to justify terminating him. "[T]he real reason" that he was fired, claimed Watts, was Murphy's desire to protect his relationship with the ambulance service's billing partner; the false harassment allegations were simply a "cover up."

Defendants moved for summary judgment on all claims; the district court granted their motion; and Watts now appeals.

II.

We review the district court's summary judgment determination de novo. *Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 526 (6th Cir. 2014). Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual issue is genuinely in dispute if a reasonable fact-finder could resolve it either way. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the disputed issue of fact is material to liability, therefore, premature entry of summary judgment inappropriately supplants the role of the fact-finder in adjudicating liability. *See id.* at 248–49. Denial of summary judgment where there is no genuine dispute of material fact, on the other hand, improperly permits a claim to go to the fact-finder even though there can be only one possible outcome. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson*, 477 U.S. at 250–52. In determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law," *Anderson*, 477 U.S. at 251–52, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *Shreve v. Franklin Cnty.*, 743 F.3d 126, 132 (6th Cir. 2014).

A.

Watts first contends that the district court erred in entering summary judgment against his federal employment discrimination claims under Title VII. Watts claims that he was subjected both to illegal disparate treatment and to a hostile work environment. He is mistaken in both respects.

Watts's argument seems to stem from an assumption that he is entitled to Title VII protection for any workplace wrong simply because he is male. While it is true that Title VII

"protects men as well as women," *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998), the statute does not insulate men from any and all adverse employment actions. Instead, it prohibits discrimination on the basis of, among other things, "sex." 42 U.S.C. § 2000e-2(a)(1). In other words, a plaintiff who is subjected to some workplace impropriety cannot recover for that wrong under Title VII simply because he happens to have a gender; the impropriety must have been done to him "because of [his] . . . sex." *Id.*; *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008).

The proper understanding of Title VII's operation is fatal to Watts's claims. With respect to his disparate treatment claim, Watts primarily identifies his termination as the "adverse employment action" upon which defendants' Title VII liability is predicated. *See Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 625 (6th Cir. 2013) (defining an "adverse employment action" in the Title VII discrimination context). But Watts's theory of the case directly contradicts his argument that he was terminated because of his sex. According to Watts, the real reason that Murphy wanted to fire him was in order to protect the ambulance service's relationship with one of its billing partners; the sexual harassment allegations were fabricated as a way to justify Watts's termination. Even on Watts's theory of the facts, then, he was fired not because of his sex but for ulterior motives. His argument is self-defeating.

Watts also gestures toward an argument that Murphy's selection of the particular mode of discrediting him was sex-based—that is, that Watts would not have been subjected to false accusations of sexual harassment but for the fact that he is male. Whether construed as a disparate-treatment claim or as a hostile-environment claim, this assertion is equally speculative and meritless. *See Warf v. U.S. Dep't of Veterans Affairs*, 713 F.3d 874, 878 (6th Cir. 2013) (standard for hostile-work-environment claims); *White*, 533 F.3d 381, 391–92 (standard for

disparate-treatment claims). To defeat defendants' motion for summary judgment, Watts had the obligation to point to material in the record giving rise to a genuine dispute over whether defendants' conduct was motivated by anti-male bias. *See* Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 248, 251. He has failed to do so. Instead, Watts has simply repeated his conclusory argument that sexual harassment allegations were maliciously concocted because of Murphy's desire to remove him from his position, not that the allegations were manufactured "because of" or "based on" his sex. *Warf*, 713 F.3d at 878; *White*, 533 F.3d at 391. At the very least, he has not pointed to anything in the record supporting his speculative assertion that defendants chose this particular method of discrediting him because of his sex, as opposed to in furtherance of a general plot to remove him from his job by any means available. Even assuming that false rumors were launched about Watts, not every workplace wrong is remediable under Title VII. *See Oncale*, 523 U.S. at 81 (observing that Title VII is not "a general civility code"). The district court properly granted summary judgment against Murphy's Title VII claims.

B.

Watts also argues that the district court erred in granting summary judgment against his state law tortious-interference-with-contract claim against Murphy. Watts's theory is that Murphy's fabrication of false sexual harassment allegations tortiously interfered with Watts's employment contract with the ambulance service. *See Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 5–6 (Ky. Ct. App. 2012) (noting elements of a tortious interference claim). But there are several problems with Watts's argument. Beyond the fact that Watts admits that he was an at-will employee and cannot identify any employment contract between him and the ambulance service, there is no evidence that anyone ever complained to the board of directors about being sexually harassed by Watts. As a result, even if Murphy had attempted to derail

Watts's employment by inciting spurious harassment allegations, his attempt failed. So, too, must Watts's claim. *See id.* at 6 (one element of a tortious-interference claim is that defendant's actions "did indeed cause a breach" of the contract in question).

III.

For these reasons, we affirm the judgment of the district court.